Kenneth E. DEYARMIN, Appellee

v.

CONSOLIDATED RAIL
CORPORATION,
Appellant.

G. Kay Kennedy, Administratrix of the
Estate of James G. Kennedy,
Deceased, Appellee

v.

Consolidated Rail Corporation,
Appellant.

Patricia A. Ardizzone, Administratrix
of the Estate of Joseph Ardizzone,
Sr., Deceased, Appellee

v.

Consolidated Rail Corporation,
Appellant.

Linda M. Passonetti, Executrix of the
Estate of Rodney A. Passonetti,
Appellee

v.

Consolidated Rail Corporation,
Appellant.

Superior Court of Pennsylvania.

Argued Jan. 30, 2007.

Filed July 20, 2007.

Reargument Denied Oct. 1, 2007.

2

Ira L. Podheiser, Pittsburgh, for appellant.

Calvin J. Webb, II, Ebensburg, for appellees.

BEFORE: FORD ELLIOTT, P.J.,
ORIE MELVIN and TAMILIA, JJ.

OPINION BY ORIE MELVIN, J.:

¶ 1 By *per curiam* order entered July 19, 2006, this Court granted the Petitions for Review filed by Appellant, Consolidated Rail Corporation (Conrail), in 11 cases then pending against Conrail in the Court of Common Pleas of Cambria County. Review was limited to the following question: "whether the trial court forestalled [Con-

rail's] ability to create a record on the question of venue." Order, 7/19/06. We have given that question careful consideration and now affirm the orders overruling Conrail's preliminary objections to venue in the four cases presently remaining of the 11 originally accepted for review.[1]

¶ 2 Plaintiffs Kenneth E. Deyarmin, G. Kay Kennedy, Administratrix of the Estate of James G. Kennedy (deceased), Patricia A. Ardizzone, Administratrix of the Estate of Joseph Ardizzone, Sr. (deceased), and Linda M. Passonetti, Executrix of the Estate of Rodney A. Passonetti (deceased) (together Appellees), each filed complaints against Conrail in late 2005–early 2006 in the Court of Common Pleas of Cambria County. The complaints, filed pursuant to the Federal Employer's Liability Act (FELA), 45 U.S.C. §§ 51 *et. seq.,* and the Pennsylvania common law, alleged that while employed by Conrail at Conrail's "Altoona Works" facility located in Blair County, Pennsylvania, Plaintiffs [2] were exposed to dangerous and/or hazardous substances that resulted in various injuries to them. Specifically, the complaints filed by Plaintiffs Kennedy, Ardizzone, and Passonetti alleged wrongful death and survival actions under FELA, and the complaint filed by Plaintiff Deyarmin alleged negligence under FELA, the tort of intentional exposure to toxic substances under FELA, and a claim for medical monitoring.[3]

---

**1.** In four of the original 11 cases, Conrail subsequently discontinued the appeals after the cases were resolved before the trial court (Nos. 1350 WDA 2006 (*James*), 1353 (*Miller*), 1354 (*Picano*), and 1356 (*Vaughn*)). Another case, No. 1357 WDA 2006 (*Smith*), was discontinued on November 15, 2006. Two additional cases were resolved after oral argument before this Court and discontinued at the request of both parties (Nos. 1355 WDA 2006 (*Simendinger*) and 1348 (*McCreary*)). Thus, our disposition in this appeal pertains to the following four cases: Nos. 1349 WDA 2006

(*Deyarmin*), 1351 (*Kennedy*), 1352 (*Ardizzone*), and 1358 (*Passonetti*).

**2.** We refer to Mr. Kennedy, Mr. Ardizzone, and Mr. Passonetti as "Plaintiffs" for ease of reference although we recognize that they are deceased and that the actions are being litigated by representatives of their respective estates.

**3.** While uncertain of the exact number of similar cases now pending against Conrail in the Court of Common Pleas of Cambria County,

¶3 Common to each of the four complaints were the following allegations relevant to venue:

5. Venue lies in Cambria County, Pennsylvania where [Conrail] regularly conducts business, pursuant to 45 U.S.C. § 56, and pursuant to Pa.R.C.P. 2179.

\* \* \* \*

7. At all times relevant hereto, [Conrail] continuously operated facilities in Cresson, South Fork, and Conemaugh, Cambria County, Pennsylvania.

8. At all times relevant hereto, [Conrail] disposed of the waste, hazardous and otherwise, generated at these Cambria [C]ounty facilities at the Altoona Works.

9. Waste, hazardous or otherwise, generated at other facilities (outside of Cambria County) was sent to and through Cambria County for its ultimate disposal at the Altoona Works.

10. This waste was handled and organized at [Conrail's] Cambria County facilities, so that the rail cars containing this waste could be shipped to, and effectively left at the Altoona Works for its ultimate disposal.

11. [Conrail] engaged in tortious conduct, as set forth herein by generating, handling, preparing, segregating, organizing, etc., hazardous waste on a regular basis in Cambria County, with the intention and purpose of illegally disposing of it at [Conrail's] Altoona Works.

12. [Conrail] utilized Cambria County as a 'staging area' as part of its corporate plan for hazardous waste disposal.

13. Plaintiff's causes of action, as set forth herein, arose in Cambria County, as a result of [Conrail] engaging in said tortious conduct in Cambria County.

14. The 'transactions or occurrences' of waste being generated, handled, prepared, segregated, organized, etc. in Cambria County, by [Conrail], on a regular basis, qualify as 'transactions or occurrences' out of which the causes of action set forth herein arose.

15. At the time Plaintiff suffered and/or developed the injuries set forth herein, [Conrail] was regularly conducting business in Cambria County. At the time Plaintiff died, [Conrail] was regularly conducting business in Cambria County. [Conrail] continues to regularly conduct business in Cambria County.[4]

16. During the time period that the aforementioned tortious conduct occurred, [Conrail] was actively engaged in doing business and regularly conducted business in Cambria County.

*Kennedy* Complaint (No. 2005–5069), at unnumbered pages 2–4; *Passonetti* Complaint (No. 2006–188), at unnumbered pages 2–4; *Ardizzone* Complaint (No. 2005–4816), at unnumbered pages 2–4.[5]

---

we note that Conrail refers to there being "approximately 60" cases, *see* Appellant's brief at 37, and that the trial court entered an order on November 20, 2006 consolidating 61 cases (including the four involved here) for pre-trial purposes. *See* Trial Court Order, 11/20/06.

**4.** Paragraph 15 was different in the *Deyarmin* complaint; it alleged only: "[Conrail] continues to regularly conduct business in Cambria County." *Deyarmin* Complaint (No. 2005–3202), at unnumbered pages 2–4.

**5.** At paragraphs 23–25, Plaintiffs alleged that Conrail, on July 6, 2000, had entered into guilty plea agreements admitting guilt to four counts of violating 35 P.S. § 6018.401(a) (Management of Hazardous Waste), one count of violating 35 P.S. § 6018.610(1) (Unlawful Conduct), and one count of violating 35 P.S. § 6018.302(a) (Disposal, Processing and Storage of Residual Waste). In paragraphs 29 through 33, Plaintiffs alleged:

29. [Conrail's] criminal convictions ... resulted from [Conrail's] illegal disposal, processing, storage, handling and/or man-

¶ 4 At paragraph 18, each complaint listed the employment dates for the respective Plaintiff: Mr. Deyarmin was employed by Conrail from April 1, 1976 until May 28, 2002 as a carman; Mr. Kennedy was employed by Conrail from April 1, 1976 until October 23, 2001 as a carman; Mr. Ardizzone was employed by Conrail from April 1, 1976 until approximately May 1990 as a carman; and Mr. Passonetti was employed by Conrail from April 1, 1976 until approximately April 21, 2003, position unspecified. *Deyarmin* Complaint (No. 2005–3202), at 3; *Kennedy* Complaint (No. 2005–5069), at unnumbered page 4; *Ardizzone* Complaint (No. 2005–4816) at unnumbered page 4; *Passonetti* Complaint (No. 2006–188) at unnumbered page 4.

¶ 5 In each of these actions, Conrail filed preliminary objections, raising, *inter alia,* an objection to venue in Cambria County.[6] Specifically, the preliminary objections filed in response to the complaint in *Deyarmin* (which were typical of the preliminary objections filed in response to the other three complaints), provided:

> 6. [Conrail] does not have a registered office or principal place of business in Cambria County (*See* Affidavit of Jonathan Broder, a true and correct copy of which is attached hereto and marked as Exhibit 'B').

7. At Paragraph 5 of Plaintiff's Complaint, Plaintiff asserts that venue is proper in Cambria County under [Pa. R.C.P.] 2179(a)(2) by stating that [Conrail] 'regularly conducts business' in Cambria County.

8. At Paragraphs 7 through 16, Plaintiff alleges that [Conrail] has conducted business in Cambria County, that the 'transaction or occurrence' alleged by Plaintiff occurred in Cambria County, and that [Conrail] continues to regularly conduct business in Cambria County.

9. Defendant does not regularly conduct business in Cambria County. (*See* Ex. B).

10. Plaintiff avers at Paragraph 13 that his cause of action arose in Cambria County.

11. To the contrary, Plaintiff alleges that his exposure to 'dangerous and/or hazardous substances,' in the course of Plaintiff's employ with [Conrail], occurred at [Conrail's] Altoona Works, which is located in Blair County.

12. Plaintiff argues at Paragraph 14 that the 'transaction or occurrence' giving rise to his cause of action in the instant case was the alleged generation, handling, preparation, segregation and

---

agement of various dangerous and/or hazardous substances, including, but not limited to [providing list].

30. [Conrail] illegally disposed of the aforementioned dangerous and/or hazardous wastes at various places and/or locations where Plaintiff was required by [Conrail] to work.

31. [Conrail] knew or should have known that the aforementioned dangerous and/or hazardous substances were dangerous to [its] employees who worked in and around the areas where said hazardous substances were handled, managed, processed, stored and/or disposed.

32. [Conrail] knew or should have known that [its] employees would come in contact with, or be exposed to, the aforementioned

dangerous and/or hazardous substances in their required work activities.
*Kennedy* Complaint (No. 2005–5069), at unnumbered pages 5–7; *Passonetti* Complaint (No. 2006–188), at unnumbered pages 5–7; *Ardizzone* Complaint (No. 2005–4816), at unnumbered pages 5–7; *Deyarmin* Complaint (No. 2005–3202), at unnumbered pages 4–6.

6. We take judicial notice that the docket in *Despoy v. Consolidated Rail Corp.* (No. 2002–1121) reflects that the *Despoy* case was transferred from the Court of Common Pleas of Philadelphia County to Cambria County on Conrail's petition to transfer venue. *See also infra* n. 10.

organization of allegedly hazardous materials in Cambria County.

13. Moreover, the 'transaction or occurrence' at issue, Plaintiff's alleged exposure to 'dangerous and/or hazardous substances,' allegedly took place at [Conrail's] Altoona Works located in Blair County.

14. No 'transaction or occurrence' alleged by Plaintiff arose in Cambria County.

\* \* \* \*

16. Plaintiff has failed to aver any facts demonstrating that venue is proper under [Pa.R.C.P.] 2179(a).

17. Accordingly, Cambria County is not the proper venue for this action; thus, this action should be dismissed or, in the alternative, transferred to the appropriate venue.

Defendant's Preliminary Objections to Plaintiff's Complaint [*Deyarmin*] (No. 2005–3202), at unnumbered pages 2–3 (internal citations to the *Deyarmin* Complaint, attached as Exhibit A to Conrail's Preliminary Objections, omitted).

¶ 6 Attached to Conrail's preliminary objections as Exhibit B was the Affidavit of Jonathan Broder, which provided *in toto* as follows:

My name is Jonathan M. Broder. I . . . have personal knowledge of and could testify competently to the facts herein stated:

1. I am currently employed by [Conrail]. My current position is Vice President—General Counsel and Corporate Secretary.

2. I have knowledge relating back to April 1, 1976—the date of Conrail's creation by Congress—of Conrail's activities in rail traffic and operation in interstate commerce in the United States.

3. I am intimately familiar with the present corporate structure and operations of [Conrail].

4. [Conrail] is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.

5. Since June 1, 1999, [Conrail] has operated exclusively as a switching railroad, moving cars delivered to it by other railroads.

6. [Conrail]'s operations are limited to Michigan (in the Detroit area), Pennsylvania (in the Philadelphia area) and New Jersey.

7. [Conrail] has no registered office in Cambria County, Pennsylvania.

8. [Conrail] does not regularly conduct business in Cambria County, Pennsylvania. [Conrail] has no employees or agents that work, in any capacity, in Cambria County, Pennsylvania.

9. [Conrail] owns no track or other assets in Cambria County, Pennsylvania.

10. To the extent that a rail asset may appear in Cambria County, Pennsylvania which has the Conrail logo or other Conrail markings thereon, said asset(s) are not owned or operated by Conrail. All such assets still bearing the Conrail logo have been since June 1, 1999, either conveyed to other entities or leased to other entities for their exclusive use.

Defendant's Preliminary Objections to Plaintiff's Complaint [*Deyarmin*] (No. 2005–3202), Exhibit B (Affidavit of Jonathan Broder).

¶ 7 In response, these four Plaintiffs admitted that Conrail does not have a registered office in Cambria County but denied that Conrail does not regularly conduct business in Cambria County and that no 'transaction or occurrence' arose in Cambria County. Plaintiff's Answer to Defendant's Preliminary Objections to Plaintiff's Complaint (*Deyarmin*, No. 2005–3202, at

¶¶ 6, 9, 14); *id.* (*Kennedy,* No. 2005–5069, at ¶¶ 8, 11, 16); (*Ardizzone,* No. 2005–4896, at ¶¶ 8, 11, 16); (*Passonetti,* No. 2006–188, at ¶¶ 8, 11, 16).

¶ 8 The trial court (the Honorable Timothy P. Creany) held oral argument on Conrail's preliminary objections but did not allow the introduction of evidence relevant to venue.[7] By order dated February 21, 2006, the trial court overruled Conrail's preliminary objection to venue in the *Deyarmin, Kennedy* and *Ardizzone* cases. In its order, the trial court stated in pertinent part:

> As [Conrail] has conceded during argument, this motion re-raises the same objection to venue that was presented to this Court and previously denied in six of these cases, namely 2005–380, 2005–2353, 2005–2080, 2005–2082, 2005–2354, and 2005–2609, as well as substantially similar cases, by Orders issued June 7, 2005 and October 26, 2005. Order dated September 29, 2005, determined Cambria County venue in 17 related cases. There being no change in the substance of the argument, the motion to dismiss for improper venue in the above captioned cases is OVERRULED.

Trial Court Order, 2/21/06, at unnumbered page 2. By order dated March 8, 2006, the trial court also overruled the preliminary objection to venue in the *Passonetti* case.

¶ 9 Conrail filed applications to amend the trial court's orders to include language indicating that a substantial issue of venue was presented, Pa.R.A.P. 311(b), or that a controlling question of law was presented, Pa.R.A.P. 1311(b). When the trial court did not rule on these applications, they were subsequently deemed denied and entered on the docket on April 25, 2006. Conrail filed separate petitions for review with this Court on May 18, 2006, which were granted, and, as noted above, our review was limited to the question of "whether the trial court forestalled [Conrail's] ability to create a record on the question of venue." Order, 7/19/06.[8] As subsequently noted by the trial court in its Rule 1925(a) statement: "Conrail ha[d previously] attempted to appeal many of the prior multiple similarly situated cases including at least 33 attempts to achieve review denied by [the Superior Court] and 15 separate attempts to appeal denied by the Supreme Court." Trial Court Statement in Lieu of Opinion Pursuant to Pa. R.A.P.1925, at unnumbered page 2.

¶ 10 A trial court has discretion to determine the lack of need for further discovery on the issue of venue, and we review its decision in that regard for abuse of discretion. *See Fritz v. Glen Mills Sch.,* 840 A.2d 1021 (Pa.Super.2003). "[T]he court abuses its discretion if, in resolving the issue for decision, it misapplies the law, exercises its discretion in a manner lacking reason, or does not follow legal procedure." *Continental Cas. Co. v. Pro Machine,* 916 A.2d 1111, 1115–16 (Pa.Super.2007).

¶ 11 We first set forth the legal principles that inform our review. Pa.R.C.P.

7. We note that, in the interim, Conrail had served discovery on Plaintiffs related to venue which Plaintiffs refused to answer and that Conrail had also filed motions to have the factual averments in its preliminary objections deemed admitted.

8. Conrail included a second question in its brief to this Court: "Whether this Court should retain jurisdiction to definitively determine the question of improper venue in the event the case is remanded to the trial court to permit Conrail to create a record on the venue issue?" Appellant's brief at 5. While we recognize Appellees' argument that Conrail's addition of this second question violates our order limiting review, our disposition herein renders this second question moot.

2179, governing venue against a corporation or similar entity, provides in pertinent part:

> (a) Except as otherwise provided by an Act of Assembly, by Rule 1006(a.1) or by subdivision (b) of this rule, a personal action against a corporation or similar entity may be brought in and only in
>> (1) the county where its registered office or principal place of business is located;
>> (2) a county where it regularly conducts business;
>> (3) the county where the cause of action arose;
>> (4) a county where a transaction or occurrence took place out of which the cause of action arose, or
>> (5) a county where the property or a part of the property which is the subject matter of the action is located provided that equitable relief is sought with respect to the property.

Pa.R.C.P. 2179(a), 42 Pa.C.S.A. The parties agree that subsections (a)(1) and (a)(5) are not implicated here.

¶ 12 "The[ ] prerequisites to venue [provided in Pa.R.C.P. 2179(a)] are stated in the disjunctive and [thus] acts triggering any one of the subsections are sufficient to attach venue." *Deeter–Ritchey–Sippel Associates v. Westminster Coll.*, 238 Pa.Super. 194, 357 A.2d 608, 610 (1976), *disapproved of on other grounds by Purcell v. Bryn Mawr Hosp.*, 379 Pa.Super. 626, 550 A.2d 1320 (1988). The purpose of Rule 2179 is "to permit a plaintiff to institute suit against the defendant in the county most convenient for him and his witnesses and to assure that the county selected ha[s] a substantial relationship to the controversy between the parties and [is] thereby a proper forum to adjudicate the dispute." *County Constr. Co. v. Livengood Constr. Corp.*, 393 Pa. 39, 44, 142 A.2d 9, 13 (1958).

¶ 13 Pa.R.C.P. 1006(e) provides that "[i]mproper venue shall be raised by preliminary objection and if not so raised shall be waived." *See also* Pa.R.C.P. 1028(a)(1) (providing that preliminary objections may be filed to improper venue); *Zappala v. Brandolini Prop. Mgmt., Inc.*, 589 Pa. 516, 909 A.2d 1272 (2006) (discussing preliminary objections to venue). Here, Conrail raised its challenge to venue by preliminary objection. As critical to the particular question we now review, Pa.R.C.P. 1028 also provides, at subsection (c)(2), that "the court shall determine promptly all preliminary objections" and "[i]f an issue of fact is raised, the court shall consider evidence by deposition or otherwise."

¶ 14 Before examining the procedure for resolving preliminary objections to venue, it is important to review the distinction between jurisdiction and venue. As our Supreme Court has explained:

> Subject matter jurisdiction relates to the competency of a court to hear and decide the type of controversy presented. *McGinley v. Scott*, 401 Pa. 310, 164 A.2d 424 (1960). Jurisdiction is a matter of substantive law. *Id.* at 428; 42 Pa.C.S. § 931(a) (defining the unlimited original jurisdiction of the courts of common pleas).

> Venue relates to the right of a party to have the controversy brought and heard in a particular judicial district. *McGinley*, 164 A.2d at 427–28. Venue is predominately a procedural matter, generally prescribed by rules of this Court. *Id.* at 429; 42 Pa.C.S. § 931(c). Venue assumes the existence of jurisdiction. 42 Pa.C.S. § 931(b) (referencing rules for change of venue in cases within the jurisdiction of courts of common pleas); Pa.R.Crim.P. 584 (relating to the procedure for a change of venue amongst

courts of common pleas for the trial of criminal actions).

Subject matter jurisdiction and venue are distinct. However, since jurisdiction references the power of a court to entertain and adjudicate a matter while venue pertains to the locality most convenient to the proper disposition of a matter, venue can only be proper where jurisdiction already exists. 92A C.J.S., Venue § 2. The terms are often used interchangeably because they must exist simultaneously in order for a court to properly exercise its power to resolve a particular controversy.

*Commonwealth v. Bethea,* 574 Pa. 100, 113–14, 828 A.2d 1066, 1074–75 (2003), *cert. denied, Bethea v. Pennsylvania,* 540 U.S. 1118, 124 S.Ct. 1065, 157 L.Ed.2d 911 (2004).

¶ 15 However, as our Supreme Court has also explained, "for procedural purposes, objections to venue are treated as raising a question of jurisdiction." *County Constr.,* 393 Pa. at 45, 142 A.2d at 13. *See also Gaetano v. Sharon Herald Co.,* 426 Pa. 179, 231 A.2d 753 (1967) (same). Thus, as explained in *Schmitt v. Seaspray–Sharkline, Inc.,* 366 Pa.Super. 528, 531 A.2d 801 (1987), where the defendant contested jurisdiction by filing preliminary objections:

> [t]he moving party has the burden of *supporting* its objections to the court's jurisdiction. Once the plaintiff has produced some evidence to support jurisdiction, the defendant must come forward with *some evidence of his own to dispel* or rebut the plaintiff's evidence. The moving party may not sit back and, by the bare allegations as set forth in the preliminary objections, place the burden upon the plaintiff to negate those allegations. It is only when the moving party properly raises the jurisdictional issue that the burden of proving jurisdiction is

upon the party asserting it. If an issue of fact is raised, the court shall take evidence by deposition or otherwise. The court may not reach a determination based upon its view of the controverted facts, but must resolve the dispute by receiving evidence thereon through interrogatories, depositions, or an evidentiary hearing. Where an essential factual issue arises from the pleadings as to the scope of a defendant's activities within the Commonwealth, the plaintiff has the right to depose defendant as to his activities within the Commonwealth, and the court must permit the taking of the deposition before ruling on the preliminary objections. Where neither party presents evidence by which the court can properly resolve the issue, it is appropriate to remand with directions that an order be entered allowing the parties a reasonable period of time in which to present evidence by deposition, interrogatories or otherwise.

531 A.2d at 803–04 (internal citations omitted, emphasis in the original). *See also American Hous. Trust, III v. Jones,* 548 Pa. 311, 696 A.2d 1181 (1997) (citing *Schmitt* favorably); *Liggitt v. Liggitt,* 253 Pa.Super. 126, 384 A.2d 1261, 1263–64 (1978) (explaining that "[p]reliminary objections are pleadings [and] [i]n raising questions of jurisdiction and venue, the defendant is the moving party and bears the burden of supporting his claim of lack of jurisdiction and venue.").

■ ¶ 16 "[A] plaintiff generally is given the choice of forum so long as the requirements of personal and subject matter jurisdiction are satisfied." *Purcell v. Bryn Mawr Hosp.,* 525 Pa. 237, 243, 579 A.2d 1282, 1284 (1990). *See also Masel v. Glassman,* 456 Pa.Super. 41, 689 A.2d 314, 316 (1997) (explaining that "[a] plaintiff's choice of forum is given great weight").

In *Kring v. Univ. of Pittsburgh,* 829 A.2d 673 (Pa.Super.2003), *appeal denied,* 577 Pa. 689, 844 A.2d 553 (2004), this Court explained that the presumption in favor of a plaintiff's choice of forum has no application where the trial court was faced not with a question of *forum non conveniens* but with the question of whether venue was or was not proper in a particular county. In *Kring,* we explained:

> [Venue] either is or it is not [proper]. In *Caplan v. Keystone Weaving Mills, Inc.,* 431 Pa. 407, 246 A.2d 384, 386 (1968), the Pennsylvania Supreme Court stated that when we review a trial court's "order ruling upon the propriety of the venue chosen by the plaintiff ... we recognize no difference procedurally between a claim that the action was instituted before the wrong tribunal and a claim that the action was brought before a court lacking competence to entertain it." If, as decided by the trial court in this case, venue in Washington County is improper, then it is of no import that Appellant instituted this action in that forum, as the trial court had no jurisdiction to hear the case. *See id.* (stating that "objections to venue have been treated by this Court as raising a question of jurisdiction").

*Id.* at 676. In the subsequent case of *O'Donnell v. McDonough,* 895 A.2d 45, 47 (Pa.Super.2006), however, which did not involve *forum non conveniens,* this Court again referred to the presumption in favor a plaintiff's choice of venue. We note in this regard only that Conrail does not dispute that venue would be proper in Blair County, i.e., the location of Altoona Works and the place where the exposure allegedly occurred. If venue may also be appropriate in Cambria County then Appellees' right to choose venue will be respected. With this background, we turn to the specific question at hand.

¶ 17 Conrail argues that Appellees did not allege facts which establish that venue is proper in Cambria County under Pa.R.C.P. 2179(a)(2), (3) or (4), and that, through its preliminary objections and attached affidavit, it created issues of fact such that discovery was required. Appellees counter that they did allege facts sufficient to support venue in Cambria County and that Conrail, as the moving party on preliminary objections, did not raise any issues of fact such that discovery was required. As we will now explain, we agree with Appellees that they alleged facts sufficient to support venue in Cambria County under Pa.R.C.P. 2179(a)(4) (transaction or occurrence) and that discovery was not required on this record.

¶ 18 Both Pa.R.C.P. 2179 (governing venue in actions against corporations and similar entities) and Pa.R.C.P. 1006 (governing venue in actions against individuals) permit an action to be brought in any county "where a transaction or occurrence took place out of which the cause of action arose." Pa.R.C.P. 2179(a)(4); Pa.R.C.P. 1006(a)(1). As this Court has explained:

> Under both rules, Pennsylvania courts have interpreted "a transaction or occurrence" to "require that a transaction ... and not merely some part of the transaction, take place in the county where venue is laid [because] [i]t would lead only to confusion and a practice which we have heretofore referred to as 'forum shopping' if the law were to permit suit to be commenced against a [defendant] in any county where any facet of a complex transaction occurred." *Craig v. W.J. Thiele & Sons, Inc.,* 395 Pa. 129, 149 A.2d 35, 37 (1959). *See also* Pa. R.C.P. 1006(a) Note (referencing *Thiele* for a definition of a transaction or occurrence). Therefore, "parties cannot avoid the 'transaction' requirement by characterizing 'a part of a transaction' as an

'occurrence.'" *Sunderland v. R.A. Barlow Homebuilders,* 791 A.2d 384, 392 (Pa.Super.2002).

*Kring,* 829 A.2d at 678.

¶ 19 In *Thiele,* which involved an action based on a contract for the purchase of truck bodies, our Supreme Court held that venue did not lie in the county where the appellant purchaser had placed the order for the goods in the absence of any averment that the contract itself was made in that county. *See* 395 Pa. at 133, 149 A.2d at 37 (referencing the principle of contract law that the place of making a contract is not where the offer is made but where it is accepted). The Supreme Court reasoned that, while the placement of an order is obviously part of the underlying contractual transaction, "[t]he framers of our rule must have intended to require that a transaction (in this case the making of a contract) and not merely some part of the transaction, take place in the county where venue is laid." *Id.* at 134, 149 A.2d at 37. The Supreme Court reached this conclusion in *Thiele* after noting that Pa.R.C.P. 2179 was drafted from the Illinois Code of Civil Practice but that our legislature had deleted that part of the Illinois rule authorizing venue in any county wherein a "part of the transaction" occurred. *Id.*

¶ 20 This Court has subsequently applied the principle delineated in *Thiele* in a number of cases, including a few outside the context of contract law.[9] In *Estate of Werner v. Werner,* 781 A.2d 188 (Pa.Super.2001) (interpreting Pa.R.C.P. 1006), this Court determined that, in an action involving a five-count complaint which alleged, *inter alia,* an action for civil conspiracy to fraudulently induce a decedent to execute a codicil to his will, the fact that two meetings and the drafting of relevant

documents occurred in Allegheny County did not constitute a transaction or occurrence supporting venue in that county. As this Court explained, even if the meeting in Allegheny County was the first step toward the later civil conspiracy forming the basis for the action, "such a meeting can hardly constitute more than a mere 'facet of the complex transaction'" which, under *Thiele,* cannot support venue. *Id.* at 191. Additionally, this Court rejected that the mere preparation of certain documents by lawyers in Allegheny County and the fact that some of the defendants had engaged in long distance communications with those attorneys would constitute a transaction or occurrence within the meaning of Pa.R.C.P. 1006. *Id.* at 192.

¶ 21 In *Sunderland v. R.A. Barlow Homebuilders,* 791 A.2d 384 (Pa.Super.2002) (interpreting Pa.R.C.P. 1006 and 2179), this Court determined that in a wrongful death and survival action filed in Philadelphia County against various individuals and corporate defendants related to a car accident that occurred in Montgomery County, venue was appropriately transferred to Montgomery County despite appellant's contention that decedent's death in a Philadelphia County hospital was an "occurrence" sufficient to support venue in Philadelphia County. This Court explained that while the Supreme Court in *Thiele* had not addressed whether a decedent's death could be an occurrence giving rise to a cause of action, this Court in *Estate of Werner* had cited *Thiele* in interpreting the term "occurrence" narrowly. 791 A.2d at 392. As this Court then reasoned:

In the instant case, we have held that the Appellants' cause of action for wrongful death arose in Montgomery

---

9. *Thiele* has been followed in numerous cases involving venue in contract actions. *See e.g., Telstar Corp. v. Berman,* 281 Pa.Super. 443,

422 A.2d 551 (1980); *Pennsylvania Higher Educ. Assistance Agency v. Devore,* 267 Pa.Super. 74, 406 A.2d 343 (1979).

County, rather than Philadelphia County. We find that the "occurrences" giving rise to this cause of action are the events preceding and leading up to the fatal accident. All of these events occurred outside of Philadelphia County. In light of [*Thiele*] and *Estate of Werner*, we believe it would be inconsistent with the narrow interpretation given to the term "occurrence" by courts in Pennsylvania to hold that venue is proper in Philadelphia County solely on the basis that [decedent's] death there was an occurrence giving rise to a wrongful death cause of action that we have determined arose in Montgomery County.

*Id.*

¶ 22 In *Kring,* after prevailing in a federal action brought by a patient in the United States District Court for the Western District of Pennsylvania (located in Allegheny County), appellant dentist brought a state law action for wrongful use of civil proceedings against the university and law school that had represented the patient. The dentist had originally filed his state court action in Washington County, which was the situs of the conduct underlying the federal action. The trial court in Washington County, however, transferred the dentist's action to Allegheny County, and this Court affirmed. This Court first explained that the dentist's cause of action for wrongful use of civil proceedings had arisen in Allegheny County. 829 A.2d at 677–78. It next rejected Appellant's theory that a transaction or occurrence took place out of which the cause of action arose in Washington County, and explained:

> While we have no difficulty concluding that the facts underlying the federal lawsuit against Appellant occurred in Washington County, the same is not true for Appellant's action for wrongful use of civil proceedings against Appel-

lees. Appellant's claim for wrongful use of civil proceedings is based on a civil action brought against him and tried entirely in Allegheny County. As discussed above, the alleged facts that satisfy all the elements of this cause of action occurred in Allegheny County. Furthermore, we decline to hold that one part of Appellant's lawsuit, i.e., his alleged damages, is sufficient to establish that the occurrence from which Appellant's cause of action arose transpired in Washington County. Instead, we conclude that the occurrence was the federal lawsuit in Allegheny County[.]

*Id.* at 678.

¶ 23 Subsequently, in *Harris v. Brill,* 844 A.2d 567 (Pa.Super.2004), this Court followed *Kring* in determining that venue was proper in the Court of Common Pleas of Erie County where, even though the action underlying the plaintiff's lawsuit for wrongful use of civil proceedings (i.e., a lawsuit alleging that plaintiff Harris had violated the Racketeering Influenced Corrupt Organizations Act ("RICO action")) had been originally filed in state court in Crawford County, it was removed to, and eventually dismissed by, the federal district court in Erie. This Court explained that the initiation of the RICO action was only one facet of the complex transaction giving rise to the state claim of wrongful use of civil proceedings, and, thus, the trial court had erred in transferring the case from Erie County to Crawford County. *Id.* at 572. However, this Court also held that "[t]he initiation of the RICO action [was] sufficient to establish a transaction or occurrence that gives rise to [plaintiff Harris's]" common law abuse of process claim" and consequently determined that venue was proper for that claim in Crawford County. *Id.* Thus, because venue was proper in both counties and the trial court had yet to rule on the objections based on

*forum non conveniens,* the matter was remanded for further proceedings.

¶ 24 As this Court's decisions applying Pa.R.C.P. 1006(a) and Pa.R.C.P. 2179(a)(4) make clear, it is appropriate in analyzing whether a "transaction or occurrence" took place in a given county to examine the nature of the claim asserted and the elements constituting the cause of action. Further, in examining Pa.R.C.P. 2179(a)(3) and (4), it is obvious the legislature intended to distinguish between "the county where the cause of action arose" and "a county where a transaction or occurrence took place out of which the cause of action arose." Thus, while venue certainly exists in Blair County where the exposure is alleged to have occurred, such does not preclude the existence of venue in another county—specifically, Cambria County—if otherwise proper under Pa. R.C.P. 2179(a)(4).

¶ 25 Here, as explained above, Appellees have alleged claims against Conrail under FELA, "a federal statute which provides the framework for handling claims of injury by federal railroad workers." *Griesser v. Nat'l. R.R. Passenger Corp.,* 761 A.2d 606, 608 (Pa.Super.2000), *appeal denied,* 565 Pa. 672, 775 A.2d 807 (2001), *cert. denied,* 534 U.S. 970, 122 S.Ct. 386, 151 L.Ed.2d 295 (2001). State courts have jurisdiction to try FELA claims and are required in handing such to apply federal substantive law. *Griesser,* 761 A.2d at 609 (citing, *inter alia,* 45 U.S.C. § 56). FELA, which was enacted in 1908, provides in pertinent part:

> Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. *See also* 45 U.S.C. § 59 (providing for the survival of any action under FELA "to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee ..."); *Consolidated Rail Corp. v. Gottshall,* 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994) (reviewing the history and general principles of FELA).

¶ 26 "A cause of action for negligence under FELA requires a want of due or ordinary care, proximate causation of the injury, and an injury." *Lehman v. Nat'l R.R. Passenger Corp.,* 443 Pa.Super. 185, 661 A.2d 17, 19 (1995), *appeal denied,* 543 Pa. 714, 672 A.2d 308 (1996). FELA has been recognized to extend to injuries from exposure to toxic substances. *See generally* Gregory G. Sarno & Anne M. Payne, "Liability under Federal Employers' Liability Act (FELA) (45 U.S.C.A. §§ 51 et. seq.) for exposure to toxic substance," 122 A.L.R. Fed. 45 (1994). Courts reviewing such cases have applied the general principles under FELA that an employee must prove an injury, an unsafe work environment, work-place re-

lated causation and foreseeability of the type of injury by the employer. Further, as recognized by the Supreme Court of the United States, "reasonable foreseeability of harm is an essential ingredient of [FELA] negligence." *Gallick v. Baltimore and Ohio R.R. Co.*, 372 U.S. 108, 117, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963) (citation omitted).

¶ 27 Appellees allege that by plea agreement Conrail pled guilty in Blair County to violations of Pennsylvania statutes governing hazardous waste and disposal thereof and that these criminal convictions resulted from Conrail's illegal disposal, processing, storage, handling and/or management of various dangerous and/or hazardous substances. Plaintiffs allege that Conrail negligently and/or intentionally exposed them to dangerous and hazardous substances at Altoona Works in Blair County. Central to the overall theory of the FELA claims is the allegation that Conrail utilized Cambria County as a 'staging area' as part of its corporate plan for hazardous waste disposal, and more specifically that Conrail engaged in tortious conduct by generating, handling, preparing, segregating, organizing, etc., hazardous waste on a regular basis in Cambria County, with the intention and purpose of illegally disposing of it at the Altoona Works, i.e., Plaintiffs' place of employment and the situs of the alleged exposure. Recognizing that foreseeability is an essential ingredient of any FELA claim, we conclude that the allegations relevant to the use of Cambria County as a "staging area" for a corporate plan of illegal disposal in another county present a transaction or occurrence giving rise to the cause of action. These allegations, unlike in previous cases, do not merely allege a facet of a complex transaction as decried in *Thiele.* Accordingly, we conclude that Appellees have alleged facts that support venue in Cambria County under Pa.R.C.P. 2179(a)(4).

¶ 28 We now address whether Conrail created an issue of fact such that venue-related discovery was required before the trial court could rule on Conrail's preliminary objection to venue. As this Court explained in *Hamre v. Resnick*, 337 Pa.Super. 119, 486 A.2d 510 (1984), a trial court may appropriately resolve preliminary objections to venue (or jurisdiction) without discovery in cases where "no factual issues were raised which necessitated the reception of evidence." *Id.* at 511. *See also Alumbaugh v. Wallace Bus. Forms, Inc.*, 226 Pa.Super. 511, 313 A.2d 281 (1973) (affirming dismissal of preliminary objection to jurisdiction where defendants offered no evidence in support of their objection). On the other hand,

> [i]f an issue of fact is raised by preliminary objections ... the [trial] court may not reach a determination based upon its view of the controverted facts, but must resolve the dispute by receiving evidence thereon through interrogatories, depositions or an evidentiary hearing.... The failure of the parties to provide the evidence necessary for a proper determination of the issue does not excuse the court from further inquiry.

*Holt Hauling and Warehouse Sys., Inc. v. Aronow Roofing Co.*, 309 Pa.Super. 158, 454 A.2d 1131, 1133 (1983).

¶ 29 Here, the tersely worded Affidavit of Broder submitted in support of Conrail's objection to venue in Cambria County does not address any activity by or involving Conrail before 1999 nor does it address the factual allegations at paragraphs 10, 11, 12 and 16 of the Complaints relevant to the alleged "staging area" said to have existed in Cambria County prior to 1999. Rather, the affidavit speaks only to the present status of Conrail's operations in Cambria County. While clearly suffi-

cient to raise a factual dispute as to venue under Pa.R.C.P. 2179(a)(2) (regularly conducting business), the affidavit does not raise any issue of fact pertinent to venue premised upon Pa.R.C.P. 2179(a)(4). Accordingly, in light of Conrail's failure to raise an issue of fact pertinent to venue under Pa.R.C.P. 2179(a)(4), discovery was not required, and the trial court did not abuse its discretion in so determining.

¶ 30 For the reasons set forth above, we conclude that the trial court did not forestall Conrail's ability to create a record on the question of venue and accordingly, we affirm the orders overruling Conrail's objections to venue in the *Deyarmin, Kennedy, Ardizzone* and *Passonetti* cases.[10]

¶ 31 Orders affirmed.

**10.** Conrail's outstanding "Application to Strike Portions of Appellees' Brief and Reliance Upon Documents Outside the Official Certified Appellate Record Pursuant to Pa. R.A.P. 123" is denied as moot. In rendering this decision, we have not relied on any of the specific documents referred to in Appellee's brief that Conrail has asked us to strike. We recognize that the trial court, on Appellees' motion and by order dated November 20, 2006 ordered its prothonotary to supplement the certified record to include all of the exhibits attached as Exhibit A to Plaintiffs' Petition for Clarification or Modification of the Record filed before the trial court. Even in the absence of the trial court's effort to supplement the certified record (which we view as an effort to ensure that this Court had all of the material the trial court considered in rendering the orders we now affirm), we take judicial notice of the publicly-available dockets in the *Despoy, Heuston, Holland, Kephart, Gray* and *Barley* cases currently pending before the trial court.