# Maria Cher's Wall St. Treats v. Daffin's Inc.

C.P. of Lawrence County, No.10283 of 2013, C.A.

*James W. Manolis*, for plaintiff.
*Paul T. Grater*, for defendant.

PICCIONE, *J.*, Aug. 19, 2014—Before this court for disposition are the preliminary objections filed on behalf of the defendant, Daffin's, Inc., a Pennsylvania Corporation (hereinafter, the "defendant"), to the complaint filed on behalf of the plaintiff, Maria Cher's Wall St. Treats, LLC, a Pennsylvania Limited Liability Company (hereinafter, the

"plaintiff"). This current action was commenced on May 9, 2013, when the plaintiff filed the complaint asserting claims of negligence, negligent misrepresentation, intentional misrepresentation, breach of contract, breach of implied warranty and breach of express warranty against the defendant. According to the complaint, Ms. Constance Mariacher (hereinafter, "Mariacher") formed the plaintiff limited liability company on April 14, 2008 for the primary purpose of producing, marketing, and selling certain confections comprised primarily of Corn Chex, caramel, white, milk, or dark chocolate, and either peanuts, cashews, almonds, or pecans (hereinafter, collectively, the "confection"). The plaintiff's confection was well received, and as of the spring of 2009, the plaintiff's confection was sold in over 100 college bookstores and in 6 Giant Eagle stores. In early 2011, the plaintiff received a request from Giant Eagle to supply it with confection for 75 Giant Eagle stores. The plaintiff was unable to produce such a large quantity to meet the demand at Mariacher's house.

In or about February 2011, plaintiff entered into an oral agreement with the defendant whereby the defendant agreed to produce the plaintiffs confection at its production facility in exchange for payment. Additionally, the defendant agreed to purchase the raw materials for the production of the plaintiff's confection then produce, and package the confection in accordance with the recipe and general directions provided to the defendant by the plaintiff and ship the confection on behalf of the plaintiff. The plaintiff avers that the defendant and its agents held themselves out to have the necessary facilities, knowledge, education, experience, expertise and employees sufficiently to provide these services for the plaintiff pursuant to the

oral agreement. The plaintiff avers that it relied upon the representations of the defendant and its agents in making the decision to enter into the oral agreement with the defendant. Prior to commencing each party's requirements per the agreement, the defendant produced and provided samples of the confection to the plaintiff for the plaintiff's approval.

The parties commenced the oral agreement in March 2011. The defendant commenced utilizing its production facility and equipment and employees, purchasing raw materials for the confection, and producing, packaging and shipping confection as the plaintiff placed orders. The defendant then billed the plaintiff for these services, and the plaintiff paid each bill. On July 15, 2011, the plaintiff received an order numbered 0000235343, from Giant Eagle; and the plaintiff placed an order with the defendant to fulfill Giant Eagle's order. The defendant was to ship this order to Giant Eagle no later than August 3, 2011.

On July 27, 2011, Mariacher visited the defendant's place of business to inquire on the status of the order to Giant Eagle. During the visit, Mariacher learned that although the almond and peanut confection portion of the order had been produced and packaged pursuant to the order, the cashew and pecan confection portion of the order was produced but had not been packaged. Mariacher alleges that an employee of the defendant, Ms. Marcie Mack (hereinafter, "Mack"), had assumed responsibility for the production of the order in the absence of Mr. Gary Sigler (hereinafter, "Sigler"), the operations manager for the defendant, because Sigler had not made adequate arrangements to ensure that the cashew and pecan confection portion of the order was timely packaged. Mariacher and her husband were forced to assist with the

packaging of the cashew and pecan confection portion to ensure it would be timely shipped as promised to Giant Eagle. Additionally, while in the defendant's business, Mariacher and her husband noticed that moths were present within the facility. When Mariacher approached Mack about the moths, Mack responded that she had previously spoken to Sigler about the moths and Sigler said the moths were harmless and not attracted to chocolate. Sigler informed Mack that if the moths landed on the confection, they would fly off the product when disturbed during the packaging process. Sigler told Mack that the moths did not pose any health, safety or other threat nor would they compromise the quality or wholesomeness of the confection.

The plaintiff argues that at the time Mack and Sigler made the representation, they knew or should have known that the moths could adulterate or contaminate the confection. The plaintiff also alleges that the defendant knew or should have known that the presence of moths would adulterate and contaminate the order and jeopardize the plaintiff's relationship with Giant Eagle. At the time Mack and Sigler made the representation, they knew or should have known that the adulteration or contamination of the confection would result in Giant Eagle's canceling its contract and ending its relationship with the plaintiff or would have a significant and reasonable likelihood of causing Giant Eagle to cancel its contract and end its relationship with the plaintiff. The plaintiff also alleges that Mack and Sigler made the representations with the intent to induce the plaintiff to rely on the representations and to persuade the plaintiff to package and ship the potentially adulterated or contaminated confection to Giant Eagle and to pay the defendant's for the confection. Based upon

those representations, the plaintiff caused the cashew and pecan confection portion of the order to be packaged and shipped to Giant Eagle, along with the peanut confection portion of the order on August 3, 2011.

On October 10, 2011, a Giant Eagle representative contacted the Plaintiff and reported that two packages from the cashew and pecan confection portion of the order had been returned to two or more Giant Eagle stores by customers because there were moths in the product; and Giant Eagle recalled those portions of the order. Giant Eagle then demanded an explanation as to why the cashew and pecan confection portion of the order was adulterated and contaminated with moths, and demanded further assurances from the plaintiff that the remaining confection and future orders of confection would not be adulterated or contaminated by moths or otherwise. Mariacher expressed to Sigler her concern that moths may have adulterated or contaminated the almond or peanut confection portion of the order that had been packaged by the defendant prior to July 27, 2011 and shipped to Giant Eagle along with the cashew and pecan confection portion of the order on August 3, 2011, Sigler assured Mariacher and the plaintiff that the almond and peanut confection portion of the order had been packaged under circumstances that could not have resulted in adulteration or contamination by moths. Based upon these representations, Mariacher represented to Giant Eagle that no other confection was adulterated or contaminated. Giant Eagle continued with its relationship with the plaintiff and did not cancel the contract between the parties.

The defendant alleges that at the time Sigler made the representation, he knew or should have known that the adulteration or contamination of the peanut confection

portion of the order would result in Giant Eagle's canceling its contract and ending its relationship with the plaintiff or would have a significant and reasonable likelihood of causing Giant Eagle to cancel its contract and end its relationship with the plaintiff. The plaintiff alleges Sigler made the representations with the intent to induce the plaintiff's reliance thereon and to persuade the plaintiff not to recall the peanut confection portion of the order or advise Giant Eagle of the circumstances, or take other measures to address the issue and to induce the plaintiff to pay for the peanut confection portion of the order. Based upon Sigler's representation, the plaintiff did not recall the peanut confection portion of the order, advise Giant Eagle of the circumstances, or take other measures to address the issue.

Thereafter, on November 7, 2011, the plaintiff received an email from Giant Eagle indicating that it received the plaintiff's chocolate caramel with peanuts confection but it contained worms therein. On December 1, 2011, Giant Eagle confirmed the cancellation of the contract with the plaintiff. The plaintiff alleges that had the peanut confection portion of the order not been contaminated and adulterated by moths, Giant Eagle would not have cancelled its contract and terminated its relationship with the plaintiff. The plaintiff also alleges that had the defendant advised the plaintiff that the peanut confection portion of the order could be or was contaminated and adulterated by moths, Giant Eagle would not have cancelled its contract and terminated its relationship with the plaintiff. The plaintiff avers that all or part of the confection produced by the defendant pursuant to the above-identified order that was returned by customers of Giant Eagle was adulterated and contaminated by the moths at the defendant's facility.

Finally, the plaintiff argues that the defendant failed to advise the plaintiff of the facts above, and instead, represented that the moths posed no such threat and would not adulterate or contaminate the order.

As stated above, the plaintiff has asserted claims of negligence, negligence misrepresentation, intentional misrepresentation, breach of contract, breach of implied warranty, and breach of express warranty against the defendant. The defendant filed preliminary objections to the complaint on July 11, 2013. Each party filed a brief in support of its position, and oral argument was hearing in this court on January 27, 2014. A further hearing specifically on the issue of venue was held before this court on June 30, 2014.

The defendant's preliminary objections contains two objections. The first preliminary objection is in the nature of a demurrer to counts I, II, and III in the complaint. The defendant argues that these counts are barred by the economic loss doctrine as well as by the gist of the action doctrine. The defendant's second objection raises a claim of improper venue pursuant to Pa.R.C.P. 1028. The court will address the defendant's second preliminary objection first.[1] "The plaintiff's choice of forum is given great weight." *Zampana-Barry v. Donaghue*, 921 A.2d 500, 503 (Pa. Super. 2007). The party challenging the choice of venue "bears the burden of proving that a change of venue is necessary, while a plaintiff generally is given the choice of forum so long as the requirements of personal and subject matter jurisdiction are satisfied." *Purcell v.*

---

1. The court notes that during the oral argument held on January 27, 2014, the plaintiff conceded that the defendant's first preliminary objection was meritorious and agreed to strike those counts from the complaint.

*Bryn Mawr Hospital*, 579 A.2d 1282, 1284 (Pa. 1990). In *Zappala v. Branolini Property Management, Inc.*, 909 A.2d 1272 (Pa. 2006), the Pennsylvania Supreme Court set forth the proper procedural and substantive components of a venue challenge. In *Zappala*, the court stated,

> [P]ursuant to rule 1006(e), the defendant may challenge venue as improper by preliminary objection. This is the exclusive method to challenge venue as "improper." A rule 1006(e) challenge to improper venue by preliminary objection has two key components: one substantive and one procedural. Substantively, the basis for a rule 1006(e) challenge is the defendant's belief that venue is "improper" in the plaintiff's chosen forum. The meaning of the word improper, as used in subsection (e), is ... shaped by rule 2179 (providing where a personal action against a corporation may be brought), 1006(a) and (b) (providing where an action may be brought) and ... 1006(c). These rules exclusively address where venue properly may be laid at the time the suit is initiated. Thus, question of improper venue is answered by taking a snapshot of the case at the time it is initiated: if it is "proper" at that time, it remains "proper" throughout the litigation.

*Id.* at 1281. "[I]f venue is improper, the court lacks superintendence to hear the case. A challenge to improper venue, therefore, must be addressed before the case proceeds." *Wilson v. Levine*, 963 A.2d 479, 484 (Pa. Super. 2008) (citations omitted).

The defendant argues that this action should be transferred to Mercer County, Pennsylvania, in accordance with Rule 2179, which sets forth the proper venue for an action against a corporate entity. Rule 2179 provides, in

pertinent part, that the venue of an action against a corporate entity may be brought "in and only in (1) the county where its registered office or principal place of business is located; (2) a county where it regularly conducts business; (3) the county where the cause of action arose; [or] (4) a county where a transaction or occurrence took place out of which the cause of action arose[.]" Pa.R.C.P. 2179(a)(1)-(4), *See also* Pa.R.C.P. 1006(b). "The prerequisites to venue provided in Pa.R.C.P. 2179(a) are stated in the disjunctive and thus acts triggering any one of the subsections are sufficient to attach venue." *Deyarmin v. Consolidated Rail Corp.*, 931 A.2d 1, 8 (Pa. Super. 2007) (brackets and citations omitted).

It is undisputed that the defendant's principal place of business is in Mercer county and that the events from which the cause of action occurred took place in Mercer County. Therefore, venue properly lies in Lawrence County only if the defendant regularly conducts business in Lawrence County.

"To determine whether a corporate entity regularly conducts business in a particular county, [the Court] must consider whether the corporate entity's contacts with that county are sufficient to compel it to defend itself there." *Singley v. Flier*, 851 A.2d 200, 201 (Pa. Super. 2004). "It is well established law in Pennsylvania that the court applies the 'quality' and 'quantity' test to determine if business contacts are sufficient to constitute regularly conducting business for purposes of establishing venue. *Fritz v. Glen Mills Schools*, 840 A.2d 1021, 1023 (Pa. Super. 2003). "Quality of acts means those directly, furthering or essential to, corporate objects; they do not include incidental acts. Quality means those acts which are so continuous and sufficient to be general or habitual.... For

corporate acts, those in aid of a main purpose are collateral and incidental, while those necessary to its existence are direct." *Kronsowski v. Ward*, 836 A.2d 143, 147 (Pa. Super. 2003).

Instantly, the defendant argues that there is no allegation in the complaint indicating any controlling transaction took place in Lawrence County other than the parties' entering into an oral agreement and the alleged failure of the defendant to perform adequately in Mercer County to enable the plaintiff to provide her products to Giant Eagle stores in Lawrence County. In its brief in support of the preliminary objections, the defendant argues that "the plaintiff's complaint contains an unsupported allegation that the defendant regularly does business in Lawrence County[.]" Def. brief. pg. 7, Upon review of the complaint, the court agrees. In the preliminary objections, the defendant does not raise issues of fact averred by the plaintiffs; rather, the defendant argues that there are insufficient contacts within Lawrence County to provide this court with jurisdiction. Although a court is not compelled to hear further evidence or testimony when an issue of fact is not raised, upon review of the pleadings, this court found that there were insufficient facts on which to rely to determine if venue properly lies in Lawrence County. Consequently, the court was unable to make a fully reasoned decision with those facts contained in the pleadings, and, therefore, scheduled a hearing on this issue. *See Fritz v. Glen Mills Schools*, 840 A.2d 1021, 1024 (Pa. Super. 2003). Therefore, the court permitted limited discovery on the issue of venue prior to the hearing on June 30, 2014, during which time the defendant offered the testimony of Sigler.

As stated above, Sigler is the defendant's operations

manager. Sigler testified that he oversees the production and manufacturing as well as sales of the defendant's products. Sigler testified that the defendant has store locations in Mercer and Venango Counties only. Additionally, the defendant employs a sales staff that solicits business, and none of the sales staff solicits business in Lawrence County. Although it is not a direct customer of the defendant's, Sigler is aware that Bunny's Cardsmart, located in Lawrence County, sells the defendant's products. Sigler testified that he calculated the percentage of revenue from Bunny's Cardsmart to be approximately .001%.

Sigler also testified as to the defendant's fundraising. The defendant provides its products to all of the local school districts within Lawrence County. The school districts include Shenango, Laurel, Mohawk, Neshannock, New Wilmington, Union, and the New Castle school districts. Sigler testified that the defendant receives little to no profit as a result of this. Those groups that choose to fundraise with the defendant's products travel to Mercer County to retrieve the defendant's product. Also, Sigler testified that the defendant advertizes in the New Castle Newspaper but did not recall any other locations in Lawrence County where the defendant advertises.

For rebuttal, the plaintiff offered the testimony of Mariacher. Mariacher testified that she contracted with the defendant with the intent to have the defendant produce her confection and have her products sold in Giant Eagle locations. She testified that she made it known to the defendant that Giant Eagle stores in Lawrence County agreed to sell her product.

Upon consideration of the facts on the record, the court is not satisfied that the defendant regularly conducts

business in Lawrence County to enable an action to be brought against it in Lawrence County. It appears that the plaintiff is arguing that Lawrence County is the proper venue for this action because the defendant's products are shipped and ultimately sold to and within Lawrence County regardless of whether the defendant contracted with entities within Lawrence County or itself entered Lawrence County or delivered its products to stores within the county for the purposes of conducting business. More simply, the plaintiff seemingly argues a stream-of-commerce ultimately ending in Lawrence County provides a sufficient basis to establish proper venue when filing suit against a corporation with its principal place of business outside Lawrence County. Although stores within Lawrence County may sell the defendant's products, the defendant is not engaged in every step of the distribution process to establish sufficient contacts within Lawrence County. Other affiliates of the defendant may distribute the defendant's product, in Lawrence County, but an affiliate's contact within Lawrence County does not necessarily flow from the affiliate to the defendant. The court will not attribute an unknown independent's actions to the defendant corporation. Moreover, the confection the defendant agreed to produce was to be packaged and sold as the plaintiff's product, rather than the defendant's.

Conversely, the defendant provided sufficient evidence to satisfy the burden placed upon it. The defendant presented evidence that the proper venue of the instant action should be Mercer County, Pennsylvania. The defendant's corporate office and store locations are located in Mercer County. The defendant exclusively solicits business and mainly advertises within Mercer

County. Although the defendant provides its products to school districts in Lawrence County, those groups who choose to use the defendant's products to fundraise pick up the product from the defendant's location in Mercer County. Moreover, the court does not consider such fundraising activities to be sufficient "quality" acts to meet the "regularly conducts business" test explained above. Finally, a court may also consider sales contacts in determining whether a corporation regularly conducts business within a county. *See Mathues v. Tim-Bar Corp.*, 652 A.2d 349, 351 (Pa. Super. 1994). Only a small portion of sales were shown to result from sales within Lawrence County. Because the defendant's quality contacts are within Mercer County, Lawrence County is without the necessary authority to hear the action. Based upon the foregoing, the defendant's preliminary objection to venue is hereby sustained. The instant action shall be transferred to Mercer County.

## ORDER OF COURT

And now, this 19th day of August, 2014, this matter having been before the court on January 27, 2014 and June 30, 2014 regarding defendant's preliminary objections, with James W. Manolis, Esquire, appearing and representing the plaintiff, and Paul T. Grater, Esquire, appearing and representing the defendant, and after a complete and thorough review of the applicable record, the court hereby orders and decrees as follows:

1. The defendant's preliminary objections are hereby sustained pursuant to the attached opinion, to the extent that the court finds that the venue of this action in Lawrence County is improper and the venue of this action is transferred to the Court of Common Pleas of Mercer County, Pennsylvania. No ruling is made in any other

preliminary objection not related to venue, but reserved for disposition in Mercer County.

2. The prothonotary shall properly serve notice of this order and attached opinion upon counsel of record. Pursuant to Pa.R.C.P. 1006(e), the prothonotary shall forward to the prothonotary of Mercer County certified copies of the docket entries, process, pleadings, depositions, and other papers filed in the action. The costs and fees for transfer and removed of the record shall be paid by the plaintiff.