IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Albert Bortz | : | |
| | : | |
| v. | : | |
| | : | |
| Zoning Board of Adjustment | : | |
| of the City of Pittsburgh and | : | |
| City of Pittsburgh, | : | No. 1974 C.D. 2016 |
| Appellants | : | Argued: November 14, 2017 |

BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE J. WESLEY OLER, JR., Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                   FILED: January 5, 2018

The City of Pittsburgh (City) and the City's Zoning Board of Adjustment (ZBA) (collectively, Appellants) appeal from the Allegheny County Common Pleas Court's (trial court) November 7, 2016 order granting Albert Bortz's (Bortz) appeal and reversing the ZBA's decision denying Bortz's special exception application for a nonconforming wall-mounted non-advertising sign and a variance (Application) under the City's Zoning Code (Zoning Code).  The issue before this Court is whether the ZBA properly denied Bortz's Application.[1]  After review, we reverse the trial court's order and reinstate the ZBA's decision.

---

[1] Appellants correctly described the applicable scope of review as follows:

> Where a full and complete record was developed before the [ZBA]**, it is the local agency decision, not that of the trial court, which is subject to the Commonwealth Court's scrutiny**.

Bortz owns the property located at 131 9th Street in Pittsburgh (Property). The Property is located in a Golden Triangle (GT) zoning district, Subdistrict C (GT-C) and houses an adult entertainment facility known as "Blush." The Property's December 9, 1997 certificate of occupancy authorized the use of a 31.5 square foot business identification, illuminated wall sign. *See* Reproduced Record (R.R.) at 75a. That sign was removed and was replaced pursuant to a November 1, 2006 occupancy certificate which permitted one 5.89 square foot (2.83' x 2.08') internally-illuminated wall-mounted business identification sign containing the word "Blush" (Business Sign), and one 14.39 square foot (6.92' x 2.08') wall-mounted changeable electronic sign (2006 Occupancy Certificate). Thus, Bortz's 2006 Occupancy Certificate expressly permitted 20.28 square feet of signage.

In December 2010, Bortz submitted a zoning application (2010 Application) to the Board for a special exception to expand the Property's existing nonconforming use (as an existing tavern and hotel with adult entertainment use) by an additional 3,190 square feet within the Property, along with a new expansion into an adjoining building. On June 9, 2011, the ZBA approved the special exception (2011 ZBA Approval), subject to the following conditions:

> 1. **Signage will be *limited* to a maximum total of 40 sq. ft.** on the [9th] St[reet] facade,[2] and no signage will be installed on the Penn Ave[nue] facade;

> Because the trial court did not take additional evidence, the Commonwealth Court's scope of review is limited to determining whether the [**ZBA**] committed an error of law or abused its discretion.

Appellants Br. at 3 (emphasis added; citations omitted). Notwithstanding, Appellants state the issue presented on appeal as: "**Was it an error for the *lower court*** to substitute its own factual and legal determinations for those of the [ZBA]?" Appellants Br. at 5 (emphasis added). Consistent with the proper standard, we review the **ZBA's** decision herein.

[2] Bortz represents in his brief that the 2011 ZBA Approval provided "for the installation of **additional** signage on the Subject Property not to exceed a maximum total of forty (40) square feet." Bortz Br. at 9 (emphasis added). It is unclear if Bortz is contending that the additional signage may total 40 square feet, or that the total signage for the 9th Street facade is 40 square feet.

2

2. Existing facades and any future exterior renovations of the [P]roperty shall not include any transparency for as long as it is occupied by Adult Entertainment use;

3. New exterior lighting shall be installed along the private alley to the rear of the site, and Applicant shall continue to clean and maintain it on a regular basis.

R.R. at 84a (emphasis added). Bortz appealed to the trial court which, by December 7, 2011 order, affirmed the 2011 ZBA Approval, but limited the expansion to the additional 3,190 square feet within the Property (2011 Decision).[3]

At the time of the 2011 Decision, the Zoning Code did not differentiate between electronic and non-electronic non-advertising signs. However, Zoning Code amendments in December 2011 added Section 919.03.O, which prohibits electronic non-advertising signs – including light-emitting diode (LED) signs – in all zoning districts except Highway Commercial (HC), Urban Industrial (UI) and General Industrial (GI) districts. Electronic Sign Messages are permitted as a conditional use in the GT Subdistricts A and B.[4]

---

This Court concludes that the 2011 ZBA Approval language is unambiguous and states that the combined total of all signage on the 9th Street façade is to be a maximum of 40 square feet.

[3] *In re Pittsburgh Trust for Cultural Res.* (C.C.P. Allegheny No. SA 11-000668, filed December 7, 2011).

[4] Appellants contend that after the Zoning Code was amended in December 2011, the existing electronic signage became nonconforming pursuant to Section 921.03 of the Zoning Code, which states:

> A nonconforming structure, including a nonconforming sign, which has a valid Certificate of Occupancy and lawfully occupies a site on the date that it becomes nonconforming that does not conform with the site development standards of the underlying zoning district or any other development standards of this [Zoning] Code may be used and maintained, subject to the standards and limitations of this section.

Zoning Code § 921.03. Notably, Section 921.03.C.3 of the Zoning Code also provides:

> In the event of arson or other willful destruction, reconstruction of nonconforming structures shall be prohibited if such casualty is traceable to the owner or his/her agent. Such instances shall result in forfeiture of the nonconforming status, and must subsequently be

In April 2015, Bortz replaced the existing 14.39 square foot wall-mounted changeable electronic sign on the Property's 9th Street facade with a wall-mounted LED sign featuring changeable lettering that advertised various Blush events and specials (LED Sign). The LED Sign was in addition to, and distinct from, the existing 5.89 square foot Business Sign also located on the 9th Street facade.

On April 13, 2015, the City notified Bortz that the LED Sign required an occupancy permit and directed Bortz to apply for an occupancy certificate within 30 days. On April 15, 2015, the City's Department of Permits, Licenses and Inspections cited Bortz for failing to obtain the permit for the LED Sign. Thereafter, Bortz applied for a permit (Sign Permit Application), which the City denied because the LED Sign's installation constituted an enlargement of a nonconforming sign.[5] On August 19, 2015, Bortz filed the Application seeking a special exception for enlargement of a nonconforming sign and a variance.

On October 8, 2015, the ZBA held a hearing. On January 14, 2016, the ZBA found, in relevant part:

brought within all the prevailing restrictions applied to the surrounding district.

Zoning Code § 921.03.C.3.

[5] The Application identified the LED Sign as "30.6 [square feet,]" and the 2011 ZBA Approval similarly described the LED Sign as "30.6 [square feet]." R.R. at 48a, 107a-108a. Notwithstanding, the Sign Permit Application, the Application and Bortz's renderings depicting the 9th Street facade identified the LED Sign's dimensions as 9 feet 9 and 3/16 inches by 3 feet 10 and 10/16 inches. *See* R.R. at 91a, 48a, 94a. Based on these dimensions, the LED Sign's total square footage should have been 37.94 square feet. The 5.89 square foot Business Sign and the new LED Sign are the only signs identified on the Property. Thus, the total sign square footage for the 9th Street facade would be the sum of the square footage for both signs (5.89 square feet + 37.94 square feet = 43.83 square feet), which exceeds the total square footage permitted by the 2011 ZBA Approval. Therefore, the trial court erroneously concluded that the total signage square footage complied with the 2011 ZBA Approval based on its acceptance of the LED Sign's 30.6 square foot description. Accordingly, even if this Court were to agree that the 2011 ZBA Approval authorized the 14.39 square foot electronic sign's replacement, we would find that the LED Sign's installation violated the 2011 ZBA Approval's square footage limitation for signage on the 9th Street facade.

4

5. As of April, 2015, [Bortz] installed a 30.6 [square foot] wall-mounted LED [S]ign, with changeable lettering advertising various events and specials held, on the 9th Street facade of the building. The new LED [S]ign is distinct from the [Business Sign] and is intended to be changeable and with information relating to the on-site business use.

6. [Bortz] acknowledged that, with the addition of the new 30.6 [square foot] LED [S]ign, the total area of signage installed on the 9th Street facade is approximately 52 [square feet.[6]]

7. As of April 15, 2015, the [City's] Department of Permits, Licenses, and Inspections issued a citation to [Bortz] for failing to obtain an Occupancy Permit for the new 30.6 [square foot] LED [S]ign and [Bortz] thus filed an application for approval of the sign.

8. At the hearing, [Bortz] asserted that, [in accordance with the 2011 ZBA Approval and the 2011 Decision], the [ZBA] permitted 40 [square feet] of signage on the 9th Street facade and that, because the new LED [S]ign did not exceed 40

---

[6] Bortz's counsel stated at the ZBA hearing:

Our position is we would be entitled, based on the amount of facade that we have and based on the number of units that were previously there, to 80 square feet of signage. What we have with the existing Blush sign and the new LED [S]ign is less than that. I think it's about 51 or 52.

R.R. at 56a. Counsel later explained, referencing Bortz's renderings:

I think the total combined square footage is about 52. The new sign where it says ['P]roposed [S]ign [L]ocation VIF[,'] that is about 38 and change, in terms of square footage. Our belief is that that square footage, as long as it was [under] 40, was permitted by the [2011 ZBA Approval].

R.R. at 58a. Counsel's explanation is confusing. It appears his reference to "38 and change" somewhat accurately described the LED Sign's square footage. *Id*. However, given that the existing Business Sign was measured at 5.89 square feet, the total square footage for the 9th Street facade would be 43.83 square feet, rather than 52 square feet. Further, counsel's statement that the new sign's measurements totalled less than 40 square feet and, thus, complied with the 2011 ZBA Approval, appears to reflect counsel's view that the 2011 ZBA Approval conditions only limited **new** signage to 40 square feet.

5

[square feet], it was permitted without requiring any additional review or permit. [Bortz] also seemed to assert a vested right in LED signage, noting that signage on that facade had been electronic since 2006.

9. [Bortz] did not address the signage regulations that now prohibit LED signs in the GT-C District or the provision of Section 921.03.F [of the Zoning Code] which states that a nonconforming sign cannot be 'enlarged, added to or replaced by another nonconforming sign.'[]

10. Corey Layman, the Zoning Administrator, appeared at the hearing and testified as to the position of the Department of City Planning. He noted that with the [Zoning] Code amendments in 2011, which forbid electronic non-advertising signs in GT Districts, the LED sign described in the 2006 Certificate of Occupancy had become nonconforming, subject to provisions of Section 922.03 [of the Zoning Code].

R.R. at 108a.

Based on those findings, the ZBA denied the Application, concluding:

1. [Zoning] Code Section 921.03.F.2 states that '[n]onconforming signs may not be enlarged, added to, or replaced by another nonconforming sign or by a nonconforming use or structure, except that the substitution or interchange of poster panels and painted boards on nonconforming signs shall be permitted.'

2. [Zoning] Code Section 919.01.C.5 defines electronic signs as 'any sign, video display, projected image, or similar device, or portions thereof with text, images, or graphics, by solid state electronic components. Electronic signs include, but are not limited to, signs that use [LED], plasma displays, fiber optics, or other technology that results in bright, high-resolution text, images, and graphics.'

3. [Zoning] Code Section 919.03.0.3 provides that electronic non-advertising signs 'shall be permitted within the HC, UI, and GI [Districts] only' and thus prohibits electronic non-advertising signs in GT Districts.

4. [Zoning] Code Section 921.03.F.2 is an explicit prohibition against the enlargement, addition or

6

replacement of [a] nonconforming sign with another nonconforming sign.

5. With the installation of the new sign on the 9th Avenue facade, [Bortz] replaced the existing nonconforming electronic sign with another nonconforming sign, resulting in 52 [square feet] of signage on that facade.

6. With [the 2011 ZBA Approval], the [ZBA] permitted 40 [square feet] of signage on that facade. However, that decision did not create a vested right in a particular type of signage and does not supersede the prohibition against the replacement of a nonconforming sign with another nonconforming sign. It also cannot be viewed as an unrestricted approval for new LED signage in a district where non-advertising electronic signage is prohibited or an approval for total signage in excess of 40 [square feet].

7. The [ZBA] thus concludes that the installation of the new nonconforming LED sign required a variance and that [Bortz] did not present sufficient or specific evidence to address the requirements for the variance relief required.

R.R. at 108a-109a.

Bortz appealed to the trial court which, based on the ZBA's record, held:

The [ZBA] incorrectly denied [Bortz's] request. [Bortz's] current signage complies with the [2011 ZBA Approval] which gave him express permission to install the additional signage. The [2011 ZBA Approval] expressly permitted [Bortz] to install additional signage on the Property with a maximum square footage not to exceed 40 square feet. The signage maintained on the Property is 36.49 square feet, less than the total permitted by the [ZBA].

Therefore, based upon the [2011 ZBA Approval], [Bortz] is entitled to expand the signage on the [9th] Street facade up to 40 square feet, including LED.

R.R. at 45a-46a (citation omitted).[7] Appellants appealed to this Court.

---

[7] These two paragraphs are the entirety of the trial court's legal analysis.

7

Appellants argue that the ZBA properly denied the Application because: (1) the conditions on the 2011 ZBA Approval did not create a vested right in signage; (2) the conditions on the 2011 ZBA Approval did not supersede the Zoning Code provisions prohibiting the enlargement or replacement of nonconforming signs; and (3) Bortz did not qualify for a variance.[8]

Appellants first contend that the 2011 ZBA Approval conditions did not create a vested right in signage. Bortz asserts that the LED Sign is not a nonconforming sign since, in 2011, the ZBA approved his 2010 Application "requesting a special exception to expand the existing legal nonconforming use of the [Property] **and to increase the signage along the [9th] Street facade.**" Bortz Br. at 2 (emphasis added). Further, according to Bortz, "the 2011 ZBA Approval explicitly granted permission for Bortz to install additional signage on the [9th] Street facade, limited to a maximum of 40 square feet." *Id.* at 3 (emphasis in original). Based thereon, Bortz contends that the Zoning Code's nonconforming sign provisions are inapplicable, and that the Zoning Code's subsequent prohibition against electronic non-advertising signs in the subject zoning district did not preclude the LED Sign.

Importantly, the 2011 ZBA Approval did not **explicitly authorize** any proposed signage.[9] Rather, the signage references in the 2011 ZBA Approval were to

---

[8] Appellants also argue that the trial court improperly substituted its judgment for the ZBA's when it found that the total square footage of signage on the Property's 9th Street facade was 36.49 square feet. We agree that the trial court's representation of the signage square footage was incorrect. However, this Court's review is of the local agency decision, not that of the trial court. *See City of Phila., Civil Serv. Comm'n v. Lewis*, 508 A.2d 633 (Pa. Cmwlth. 1986).

[9] The 2010 Application is not a part of the certified record. However, this Court may take judicial notice of information contained in the publicly-available docket in *In re Pittsburgh Trust for Cultural Resources* (C.C.P. Allegheny No. SA 11-000668, filed December 7, 2011). *See Deyarmin v. Consol. Rail Corp.*, 931 A.2d 1 (Pa. Super. 2007). Further, "[i]t is well settled that this Court may take judicial notice of pleadings and judgments in other proceedings where appropriate. This is particularly so where, as here, the other proceedings involve the same parties." *Lycoming Cty. v. Pa. Labor Relations Bd.*, 943 A.2d 333, 335 n.8 (Pa. Cmwlth. 2007) (citation omitted). Contrary to Bortz's assertion, the 2010 Application reflects that Bortz did **not** specifically request "to increase the signage along the [9th] Street facade." Bortz Br. at 2. Notably, the 2010

Bortz's attempts to compromise with neighbors by reducing his signage from the permissible 80 square feet to 40 square feet, and the ZBA's imposition of the explicit 40 square foot **limitation** on total signage on the 9th Street facade. Bortz cannot rely on the 2011 ZBA Approval as an **affirmative grant** of blanket zoning **approval** for **signage**.[10] The 2011 ZBA Approval did not bestow Bortz with express signage approval, and certainly did not grandfather Bortz's existing or future signage. Therefore, the existing 14.39 square foot wall-mounted changeable electronic sign became a nonconforming sign when Section 919.03.O.3 of the Zoning Code became effective, and Section 921.03.F.2 of the Zoning Code prohibited Bortz from enlarging the nonconforming sign. Accordingly, any relief from Zoning Code Section 921.03.F's restrictions required a variance.

Application does not expressly request an increase in signage, nor does the 2011 ZBA Approval indicate that any proposed signage was reviewed for compliance with the Zoning Code. Although the 2010 Application did contain proposed expansion renderings that included the Property's exterior signage, the 2011 ZBA Approval did not explicitly approve any signage. It is noteworthy that Bortz testified during the proceedings for the 2011 ZBA Approval, referencing drawings providing different views of the Property's facade, acknowledging that the layout was only conceptual in nature. He agreed that, despite the permissible 80 square feet of signage, the signage would remain the same size (under 40 square feet). Bortz also agreed to restrict marquee content. His testimony evidenced no other significant information regarding the proposed signage.

[10] Bortz contends that he "obtained approval in 2011 for the installation of additional signage on the [] Property not to exceed a maximum total of forty (40) square feet." Bortz Br. at 9. Relying on the provisions of the Development Permit Extension Act (Act), Act of July 9, 2013, P.L. 362, 53 P.S. §§ 11703.1-11703.8, Bortz further asserts that "[t]his approval did not expire until July 2, 2016, after the installation of the LED Sign and request for Certificate of Occupancy was filed with the City." Bortz Br. at 9. The Act provides for the automatic extension of approvals granted by various governmental entities. However, since this Court has determined that the 2011 ZBA Approval addressed the nonconforming use expansion and did not grant specific signage, we need not address the Act's applicability.

For the same reason, this Court rejects Bortz's contention that "[t]he City's adoption of a new sign ordinance after the 2011 ZBA Approval was issued is expressly prohibited from limiting the expansion or construction of the additional signage on the [] Property so long as the same complies with such prior approval." Bortz Br. at 11. We similarly reject Bortz's assertion that the "signage on the [] Property complies with the 2011 ZBA Approval[.]" Bortz Br. at 14.

This Court has explained:

Under [S]ection 922.09.E of the Zoning Code, **an applicant for a variance bears the burden of establishing *all* of the following**: (1) that there are unique physical circumstances or conditions peculiar to the property, and that the unnecessary hardship is due to those conditions; (2) that because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the Zoning Code; (3) that such unnecessary hardship has not been created by the appellee/applicant; (4) that the variance will not alter the essential character of the neighborhood nor be detrimental to the public welfare; and (5) that the variance represents the minimum variance that will afford relief and will represent the least modification possible of the regulation at issue. Zoning Code § 922.09.E.

[O]ur Supreme Court has articulated a more relaxed standard for granting a [dimensional] variance. Under this relaxed standard, when addressing the element of unnecessary hardship, 'courts may consider multiple factors, including the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood.' *Hertzberg v. Zoning B[d.] of Adjustment of City of Pittsburgh*, . . . 721 A.2d 43, 50 ([Pa.] 1998). Although *Hertzberg* eased the requirements for a variance, it did not remove them. *Tidd v. Lower Saucon T[wp.] Zoning Hearing B[d.]*, 118 A.3d 1 (Pa. Cmwlth. 2015). Moreover, despite a more relaxed standard, it is still the case that '[t]he burden on an applicant seeking a variance is a heavy one, and the reasons for granting the variance must be substantial, serious and compelling.' *Singer v. Phila[.] Zoning B[d.] of Adjustment*, 29 A.3d 144, 149 (Pa. Cmwlth. 2011).

*Demko v. City of Pittsburgh Zoning Bd. of Adjustment*, 155 A.3d 1163, 1168 (Pa. Cmwlth. 2017) (emphasis added). Because Bortz did not offer any evidence

demonstrating hardship to justify a variance from the prohibitions on enlargement of nonconforming signs as set forth in Section 921.03.F of the Zoning Code, the ZBA properly concluded that Bortz did not qualify for a variance.

For all of the above reasons, we reverse the trial court's order and reinstate the ZBA's decision.

_____
ANNE E. COVEY, Judge

Judge McCullough did not participate in the decision in this case.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Albert Bortz                        :
                                      :
                                      :
            v.                  :
                                        :
Zoning Board of Adjustment    :
of the City of Pittsburgh and     :
City of Pittsburgh,              :    No. 1974 C.D. 2016
                 Appellants   :

## O R D E R

AND NOW, this 5th day of January, 2018, the Allegheny County Common Pleas Court's November 7, 2016 order is reversed and the Zoning Board of Adjustment of the City of Pittsburgh's January 14, 2016 decision is reinstated.

_____
ANNE E. COVEY, Judge