J-A03032-22

2022 PA Super 27

| | | |
|---|---|---|
| ERNEST FREDERICK HAUSMANN AND BONNIE LYNN HAUSMANN | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : : : | |
| v. | : : : | |
| | : : | No. 1024 EDA 2021 |
| ROGER L. BERND AND GOOD PLUMBING HEATING AND  AIR CONDITIONING, INC.  AND KRATZ ENTERPRISES, INC. | : : : : : | |

Appeal from the Order Entered May 6, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  200103657

BEFORE:    STABILE, J., DUBOW, J., and McCAFFERY, J.

OPINION BY McCAFFERY, J.:                              **FILED FEBRUARY 17, 2022**

Ernest Frederick Hausmann and Bonnie Lynn Hausmann (collectively Appellants) appeal from the order entered in the Philadelphia County Court of Common Pleas, sustaining preliminary objections to improper venue filed by Roger L. Bernd, Good Plumbing and Air Conditioning, Inc. (Good Plumbing), and Kratz Enterprises, Inc. (Kratz) (collectively Appellees), and transferring the action to the Montgomery County Court of Common Pleas.  On appeal, Appellants contend the trial court erred in concluding their chosen venue was improper when the corporate Appellees regularly and habitually conduct business in Philadelphia County which was sufficient to satisfy the quality and quantity test recently affirmed by this Court in ***Hangey v. Husqvarna***, 247 A.3d 1136 (Pa. Super. 2021) (*en banc*).  For the reasons below, we affirm.

The facts underlying this action, as pled in Appellants' civil complaint, are as follows. On July 1, 2019, Appellant Ernest Hausmann was operating Appellants' Honda CRV on South Main Street in Hatfield Township, Montgomery County, when a GMC Siena, operated by Appellee Bernd, and owned by Appellee Good Plumbing, failed to stop at a red light and struck the Honda. *See* Appellants' Complaint, 10/6/20, at §§ 7, 10-12. Appellants maintain that Ernest suffered severe injuries as a result of Appellees' negligence, and Appellant Bonnie Lee suffered the loss of consortium. *See id.* at §§ 17-23, 27. Appellants further allege that at the time of the accident, Bernd was acting within the scope of his employment as an employee of Good Plumbing and/or Appellee Kratz.[1] *Id.* at § 6.

Relevant to this appeal, the complaint acknowledged that Appellants and Bernd live in Montgomery County, and both Good Plumbing and Kratz Enterprise share the same business address in Montgomery County. *See id.* at §§ 1-4. However, they averred that because Good Plumbing and Kraft Enterprises "conduct business within Philadelphia County[,] venue is appropriate in Philadelphia County[.]" *Id.* at § 5. Based on this belief, Appellants initiated this action in the Philadelphia County Court of Common

---

[1] The record does not disclose the relationship between Good Plumbing and Kratz Enterprises. As noted *infra*, Appellants assert the companies share the same business address. *See* Appellants' Complaint at §§ 3-4. Furthermore, as part of filings in this case, Appellees submitted an affidavit from Terri Goertel, who states she is the "Manager of Business Operations for . . . Good Plumbing . . . and Kratz[.]" Appellees' Preliminary Objections, Exhibit B, Affidavit of Terri Goertel.

Pleas by filing a writ of summons on January 30, 2020. They subsequently filed a civil complaint on October 6, 2020, raising one count each of negligence and loss of consortium.

On October 26th, Appellees filed preliminary objections, raising improper venue and challenging the sufficiency of the pleadings.[2] **See** Appellees' Preliminary Objections, 10/26/20, at §§ 7-19. With regard to venue, Appellees first asserted venue as to Bernd was only proper in Montgomery County, because that was where he could be served and where the cause of action arose.[3] **Id.** at §§ 10-11. Moreover, Appellees also maintained that venue in Philadelphia was improper as to Good Plumbing and Kratz because the revenue they derived in Philadelphia was "simply too small upon which to base venue" in that county. **Id.** at § 15. In support, they attached to their filing an affidavit from Goertel, manager of business operations for Good Plumbing and Kratz, which averred: (1) during the years 2016 to 2019, Appellees' total revenue was $57,820,711.68; (2) during that same time period, their total revenue in Philadelphia County was $[158,340.90]; and (3) thus, Appellees' revenue in Philadelphia County

---

[2] Due to its disposition of the venue issue, the trial court did not address the preliminary objection concerning the sufficiency of the negligence claim. **See** Trial Ct. Op., 8/25/21, at 2 n.2. Thus, that issue is not before us on appeal.

[3] **See** Pa.R.C.P. 1006(a)(1) ("an action against an individual may be brought in and only in a county in which . . . the individual may be served or in which the cause of action arose or where a transaction or occurrence took place out of which the cause of action arose").

represented less than 1% of its total revenue.[4] **See** Affidavit of Terri Goertel. Alternatively, they requested the court order evidence by deposition or otherwise to show that venue in Philadelphia is not proper. Appellees' Preliminary Objections at § 16.

Appellants filed a response in opposition to Appellees' preliminary objections. They averred that Appellees' responses to pretrial interrogatories "unequivocally establish a regular pattern" of business conducted in Philadelphia County. **See** Appellants' Response in Opposition to Appellees' Preliminary Objections, 11/10/20, at § 12. The answers to the interrogatories reflected the following, in relevant part:

> INTERROGATORY 3:
>
> State your total sales by year to customers residing or with offices located in Philadelphia County from 2016 through and including 2019.
>
> RESPONSE:
>
> 2016-$56,053.92
> 2017-$50,864.85
> 2018-$19,859.92

---

[4] Appellees later conceded the Affidavit contained two errors. First, the affidavit stated the amount of revenue the corporate Appellees derived from Philadelphia County during the relevant period was $126,778.69; however, they agreed the amount should have been $158,340.90, the same figure they provided to Appellants in their answers to interrogatories. **See** Appellees' Response to Supplemental Memorandum of Law in Further Support of Appellants' Opposition to Appellees' Preliminary Objections, 4/19/21, at 2 n.1. Second, they acknowledged a typographical error concerning the percentage value of their business in Philadelphia. **Id.** at 2. While Goertel attested the value was .0027%, Appellees conceded that was an "inadvertent mistake" and the value was actually .27%, still less than 1% of their total business. **Id.**

2019-$31,562.21

INTERROGATORY 4:

For the period 2016 through and including 2019, did you deliver products and/or service customers within Philadelphia County? If so, for each year state the number of deliveries of such products sold and/or service provided to such customers.

RESPONSE:

2016-43
2017-38
2018-21
2019-24

*Id.* at § 12, *citing* Appellants' Interrogatories Addressed to Good Plumbing in Aid of Preparation of a Complaint, and Responses of Good Plumbing to Appellants' Interrogatories.[5]

They also attached to their Response two printouts of a City of Philadelphia "Public Activity License Search" reflecting that a "Robert Kratz" had an active commercial activity license in Philadelphia since January of 2005.[6] *See id.*, Exhibit C. Thus, they averred that Appellants' responses to their interrogatories "reflect a pattern of regularly conducting business in the City of Philadelphia from 2016 to the present, including the generation of

---

[5] Appellants attached their Interrogatories and Good Plumbing's Responses as Exhibits A and B.

[6] In their accompanying Memorandum of Law, Appellants stated that "[r]ecords available through the Corporation Bureau of the State Department of Pennsylvania reveal a gentleman by the name of Robert Kratz as an owner or director of Good Plumbing[.]" Appellees' Memorandum of Law in Further Support of [ ] Opposition to Appellants' Preliminary Objections, 11/10/21, at 3 (unpaginated). However, they did not attach any supporting documentation to their filings.

substantial revenue and more than 100 business transactions through the relevant time period." *Id.* at ¶ 14.

On November 25, 2020, the trial court issued a rule to show cause why Appellees' preliminary objections should be granted. Rule, 11/25/20. The court's order directing that supplemental briefs, and accompanying discovery including depositions and/or affidavits, be filed with the court by January 11, 2021. *Id.* The trial court aptly summarized the ensuing procedural history as follows:

> On January 5[ ], 2021, a joint stipulation was filed with the Court extending the deadline for all parties to file supplemental briefs until April 2[nd]. This stipulation was stricken by the Court. [Appellees] filed a [joint] motion for reconsideration on January 21[ ], 2021 as to the denial of the joint stipulation. On January 25th, . . . this Court denied the motion for reconsideration by an Order of the Court which included the following in a footnote: "If the parties need more time to comply with this Court's Rule Returnable, the Court will entertain a motion seeking such relief, however, the Court will not permit the parties to change its Rule by Stipulation. Additionally, Counsel are reminded to review the Philadelphia Local Rules of Civil Procedure, specifically Phila.R.C.P. 208.3(b)(2)(A)(ii)."
>
> On February 4[ ], 2021, [Appellants] filed a [joint] motion for an extension of time to file supplemental briefs. Pursuant to the Motion, the purpose of the extension was due to an agreement to mediate the dispute on March 16th . . . in pursuit of a settlement. On March 15th, 2021 this Court granted [the] motion extending the deadline to file supplemental briefs until April 2[ ], 2021. On March 24th, [Appellees] filed a second [joint] motion for extension of time to file supplemental briefs. [T]he parties [stated that they] did, in fact, go to mediation on March 16th[.] However, . . . the status at the time was "the parties are continuing with negotiations." Furthermore, it was asserted . . . "the parties earnestly believe that the pending venue dispute in its current unresolved status is a litigation dispute that could impact settlement position of both parties and ultimately assist in

the resolution of this dispute." The parties were seeking to extend the deadline to file supplemental briefs until May 30[ ], 2021, a date which [was] over five (5) months from the original deadline and seventeen (17) months from the commencement of the instant litigation. At [that] point, apparently neither party had taken a deposition as allowed by this Court's rule to show cause. The only evidence presented was a sworn affidavit by Terri Goertel provided by [Appellees], as an exhibit to their preliminary objections, and [Appellees'] answers to interrogatories.

[Before the trial court ruled on the second motion for extension of time,[7] o]n April [5,] 2021[, Appellees] filed a supplemental brief in support of their preliminary objections. On April 12th, [Appellants] filed a supplemental brief in support of their opposition to [Appellees'] preliminary objections. . . . On April 19th, [Appellees] filed a reply brief in response to [Appellants'] supplemental brief. On May 6[ ], 2021, this Court sustained [Appellees'] preliminary objections and transferred this matter to the Montgomery County Court of Common Pleas.

Trial Ct. Op., 8/25/21, at 2-4 (record citation and footnotes omitted). This timely appeal follows.[8]

Appellants raise one issue on appeal:

Whether the trial court erred in sustaining [Appellees'] Preliminary Objections and determining that [Appellants'] chosen forum of the Philadelphia County Court of Common Pleas was an improper venue as to the corporate [Appellees'] Good Plumbing . . . and Kratz . . . pursuant to Pennsylvania Rule of Civil Procedure 2179 where such corporate [Appellees] (i) regularly conduct business within Philadelphia County, Pennsylvania, (ii) have conducted such business over a number of years so as to be "habitual", and (iii) the extent of such business is sufficient to satisfy the "quantity and quality" test adopted by the Pennsylvania Supreme Court and most recently addressed by the Pennsylvania Superior Court in

---

[7] The trial court subsequently denied the motion on April 16, 2021. **See** Order, 4/16/21.

[8] Appellants complied with the trial court's directive to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

*Hangey v. Husqvarna*, [247 A.3d 1136] (Pa. Super. 2021) [(*en banc*)]?]

Appellants' Brief at 4.

Appellants' sole issue on appeal challenges the trial court's order sustaining Appellees' preliminary objection to improper venue and transferring this action to the Montgomery County Court of Common Pleas. Our standard of review is well-settled:

> [A] trial court's decision to transfer venue will not be disturbed absent an abuse of discretion. A [p]laintiff's choice of forum is to be given great weight, and the burden is on the party challenging the choice to show it was improper. However, a plaintiff's choice of venue is not absolute or unassailable. Indeed, if there exists any proper basis for the trial court's decision to grant a petition to transfer venue, the decision must stand.

*Anthony v. Parx Casino*, 190 A.3d 605, 607 (Pa. Super. 2018) (citation omitted).

The venue dispute in the present case concerns only proper venue as to the corporate Appellees. Because Bernd lives in Montgomery County, and the accident occurred in Montgomery County, venue as to Bernd is proper only in Montgomery County. *See* Pa.R.C.P. 1006(a)(1) (action may be brought against individual in county where individual may be served or where cause of action arose). Nevertheless, Rule 1006(c)(1) provides that when, as here, an action seeks "joint and several liability against two or more defendants, [it] may be brought against **all defendants** in any county in which the venue may be laid against **any one** of the defendants[.]" Pa.R.C.P. 1006(c)(1) (emphasis added). Thus, if venue in Philadelphia County is proper for the

corporate Appellees, then Appellants may properly file the action in Philadelphia County against all three defendants.

Pennsylvania Rule of Civil Procedure 2179(a) provides that an action may be brought against a corporation "in and only in[:]"

(1) the county where its registered office or principal place of business is located;

(2) a county where it regularly conducts business;

(3) the county where the cause of action arose; [or]

(4) a county where a transaction or occurrence took place out of which the cause of action arose[.]

Pa.R.C.P. 2179(a)(1)-(4). Here, Appellants rely upon subsection (a)(2) to support venue in Philadelphia County. They insist the corporate Appellees "regularly conduct[ ] business" in Philadelphia County. Pa.R.C.P. 2179(a)(2). *See* Appellant's Brief at 14.

Although the term "regularly conducts business" is not defined in the Rules, this Court, sitting *en banc* in **Hangey**, summarized the relevant considerations:

> When determining whether venue is proper, "each case rests on its own facts," **Purcell v. Bryn Mawr Hosp.**, 525 Pa. 237, 579 A.2d 1282, 1286 (1990), and "[t]he question is whether the acts are being 'regularly' performed within the context of the particular business." **Monaco v. Montgomery Cab Co.,** 417 Pa. 135, 208 A.2d 252, 256 (1965). Further, in the venue context, "regularly" does not mean "principally," and a defendant "may perform acts 'regularly' even though these acts make up a small part of its total activities." **Canter v. Am. Honda Motor Corp.**, 426 Pa. 38, 231 A.2d 140, 142 (1967).
>
> In determining whether venue is proper under this rule, courts "employ a quality-quantity analysis." **Zampana-Barry**[ **v.**

> ***Donaghue***], 921 A.2d [500,] 503[ (Pa. Super. 2007)]. "The term 'quality of acts' means those directly, furthering, or essential to, corporate objects; they do not include incidental acts." ***Monaco***, 208 A.2d at 256 (*quoting* ***Shambe v. Delaware & Hudson R.R. Co.***, 288 Pa. 240, 135 A. 755, 757 (1927)). To satisfy the quantity prong of this analysis, acts must be "sufficiently continuous so as to be considered habitual." ***Zampana-Barry***, 921 A.2d at 504.

***Hangey***, 247 A.3d at 1141. Further, the venue rules

> exclusively address where venue properly may be laid at the time the suit is initiated. Thus, question of improper venue is answered by taking a snapshot of the case at the time it is initiated: if it is "proper" at that time, it remains "proper" throughout the litigation.

***Zappala v. Brandolini Prop. Mgmt., Inc.***, 909 A.2d 1272, 1281 (Pa. 2006).

As noted above, the burden is on the party challenging venue — in this case, the corporate Appellees — to show the plaintiff's chosen venue is improper. ***See Anthony***, 190 A.3d at 607. However, once they properly raise the issue of venue and provide "some evidence . . . to dispel or rebut the plaintiff's" choice, the burden shifts back to the party asserting proper venue, *i.e.*, Appellants. ***See Deyarmin v. Consolidated Rail Corp.***, 931 A.2d 1, 9 (Pa. Super. 2007) (citation omitted) (discussing burden shifting when raising question as to jurisdiction and applying to objections as to venue).[9]

---

[9] Although our research has uncovered no published decisions relying upon the burden-shifting language in ***Deyarmin***, this Court has discussed, and applied, this language in two recent unpublished memorandum decisions: ***Abdelaziz v. B. Braun Medical Inc.***, 1550 EDA 2020 (unpub. memo. at 11-13) (Pa. Super. filed 8/3/21); ***Silva v. Philadelphia Yearly Meeting***, 2729 EDA 2019 (unpub. memo. at 12-13) (Pa. Super. filed 7/28/20). ***See*** Pa.R.A.P. 126(b)(1)-(2) (unpublished non-precedential memorandum decisions of Superior Court filed after May 1, 2019, may be cited for persuasive value).

Here, Appellants contend the quantity and quality of the corporate Appellees' business activities in Philadelphia County was sufficient to establish they regularly conduct business in Philadelphia, and thereby justify venue in that county pursuant to Rule 2179(a)(2). *See* Appellants' Brief at 23-24, 26. They emphasize that the corporate Appellees derived .27% of their total revenue from 2016 through 2019 from activities in Philadelphia County, and maintained a business license in Philadelphia. *See id.* at 22, 24. Further, Appellants assert the corporate Appellees' answers to their interrogatories establish this revenue was from "a concerted and intentional pattern over a number of years involving over one hundred homes and/or businesses." *Id.* at 23-24. They insist the fact that the corporate Appellees "entered the homes and business places of Philadelphians for the purpose of providing service to HVAC systems, more than 125 times[,]" demonstrates the quality component of the venue analysis. *Id.* at 26 (emphasis omitted). Indeed, Appellants contend this Court's *en banc* decision in *Hangey* is controlling. *See id.* at 18.

We begin with a discussion of *Hangey*. In that case, the plaintiff husband was maimed in August of 2016 when he fell off a Husqvarna riding lawnmower. *Hangey*, 247 A.3d at 1139. The accident occurred at the plaintiffs' property in Wayne County; the plaintiffs had purchased the mower from defendant Trumbauer's Lawn and Recreation in Bucks County. *See id.* The plaintiffs (husband and wife) subsequently filed a lawsuit in Philadelphia County against five defendants — including Trumbauer's and Husqvarna Professional Products, Inc. (HPP) — asserting claims of negligence, strict

- 11 -

liability, and loss of consortium. *Id.* The defendants filed preliminary objections to, *inter alia*, improper venue, and the trial court permitted the parties to conduct pretrial discovery on that issue. *Id.*

Relevant herein, the discovery revealed the following. Trumbauer's principal place of business was in Bucks County, and it did not regularly conduct business in Philadelphia. *Hangey*, 247 A.3d at 1139. HPP was a Delaware corporation, with a principal place of business in North Carolina. *Id.* With regard to its business activities in Philadelphia,

> [i]n 2016, [HPP] had approximately $1.4 billion in sales revenue in the United States, of which $75,310.00 came from direct sales in Philadelphia County. Of the $75,000 in sales made in Philadelphia in 2016, roughly $69,700 came from a single Husqvarna authorized dealer[.] Approximately 0.005% of [HPP's] 2016 United States sales revenue resulted from direct sales in Philadelphia County. Sales data from 2014 and 2015 is substantially similar, with approximately 0.005% of Husqvarna's annual United States sale revenue resulting from direct sales within Philadelphia County. These sales figures do not include the revenue generated by selling Husqvarna products at "big box" retailers such as Home Depot, Lowe's, or Sears. In the case of "big box" retailers, John Stanfield, the corporate representative for [HPP], testified that [HPP] delivers its products to the retailers' distribution centers, none of which are located in Philadelphia County. Once the Husqvarna products are delivered to the retailers' distribution centers, the retailers retain sole discretion as to where the products will be offered for sale, including stores located in Philadelphia County.

*Id.* (citations omitted). The trial court sustained the defendants' preliminary objections and transferred the case to Bucks County. *Id.* at 1140. Specifically, the trial court concluded:

> HPP's contacts satisfied the quality prong of the venue analysis, but did not satisfy the quantity prong. The court reasoned that

only 0.005% of HPP's national revenue came from sales in Philadelphia and concluded that because this amount was "*de minimis*," HPP's contact with Philadelphia was not general and habitual.

*Id.*

On appeal, an *en banc* panel of this Court reversed, concluding that HPP's "contacts with Philadelphia — including having an authorized dealer in Philadelphia, and selling $75,310 worth of products through that dealer in 2016 in Philadelphia — were 'sufficiently continuous so as to be considered habitual.'" **Hangey**, 247 A.3d at 1143. While HPP's Philadelphia sales constituted only .005% of the company's revenue in 2016, the **Hangey** panel explained:

> The percentage of a company's overall business that it conducts in a given county, standing alone, is not meaningful and is not determinative of the "quantity" prong. Each case turns on its own facts, and we must evaluate evidence of the extent of a defendant's business against the nature of the business at issue. A small or local business may do all of its work in just a few counties or even a single one, while a large business may span the entire nation. **Indeed, the percentage of sales a multi-billion-dollar company makes in a particular county will almost always be a tiny percentage of its total sales. Courts thus should not consider percentages in isolation. Rather, courts must consider all of the evidence in context to determine whether the defendant's business activities in the county were regular, continuous, and habitual.**

> Here, HPP is a multi-billion-dollar corporation. It had at least one authorized dealer located in Philadelphia to which it delivered products for sale. Although HPP's sales through authorized dealers in Philadelphia constituted only 0.005% of HPP's national sales, the dollar figure of those Philadelphia sales in 2016 was $75,310. The number and dollar figure of sales in Philadelphia, and the fact that HPP has an authorized dealer in Philadelphia to sell its products, is relevant to the determination of whether HPP's contacts with Philadelphia satisfied the

- 13 -

"quantity" prong of the venue analysis. Therefore, we conclude the trial court erred in relying almost exclusively on evidence of the percentage of defendant's business that occurred in Philadelphia when addressing the quantity prong.

\* \* \*

In reaching this conclusion, we do not find it necessary to approve or disapprove of any of our prior decisions. Rather, our conclusion is based on the prior precedents of the Pennsylvania Supreme Court and consistent with those of our Court. However, as discussed above, we clarify that **the percentage of sales of a corporation in a venue is but one factor to consider when determining whether the quantity prong of the venue analysis is satisfied**, and such evidence must be viewed within the context of the business at issue in each case.

*Id.* at 1142-43 (emphases added). Thus, the *en banc* panel reversed the order of the trial court sustaining the defendants' preliminary objections.[10]

Here, Appellants' argument rests primarily on the ruling in **Hangey**. They emphasize that the "dollar value of sales within the venue" in **Hangey** (.005%) was less than the percentage in the present case (.27%). Appellant's Brief at 19; **see also id.** at 23 (noting corporate Appellees "do nearly 6 times the business of the defendant in" **Hangey**). Additionally, they assert the corporate Appellees' "continued sales over the course of several years demonstrate that [its] business activities in Philadelphia are 'habitual.'" **Id.** at 23 (footnote omitted). Indeed, Appellants argue "[t]he pattern established both by revenue and by the number of households or businesses to which [the corporate Appellees] provided service demonstrates" its business within

---

[10] We note Judge Victor Stabile filed a Dissenting Opinion, joined by Judge Megan King, in which he stated he "would conclude the trial court acted within its permissible discretion in sustaining preliminary objections to venue in Philadelphia County." **Hangey**, 247 A.3d at 1143 (Dissenting Op., Stabile J.).

- 14 -

Philadelphia was "general or habitual even if only a small component of the total revenue[.]" *Id.* at 25 (emphasis omitted).

Appellants also point out that the corporate defendant in *Hangey* was "an international corporation with little to no personal interaction within the venue . . . but rather engaged in sales through a single distributor." Appellants' Brief at 19-20. Conversely, here, they insist the corporate Appellees "have intentional and highly personal contacts within the forum" — including dispatching employees from their Montgomery County office "to provide service to Philadelphia customers" and maintaining a "business license in Philadelphia County[, thus] purposefully avail[ing] itself of the jurisdiction." *Id.* at 24. With regard to the "quality prong," Appellants maintain the corporate Appellees "appear to concede" this prong is met because their preliminary objections were based "solely on the limited 'quantity' of revenue generated[.]" *Id.* at 27. In any event, they insist that the "HVAC and plumbing services [the corporate Appellees provided] to homeowners and businesses in Philadelphia County" constitute the "very core of [their] business activities[.]" *Id.* at 27-28.

In sustaining Appellees' preliminary objection to venue, the trial court found that the corporate Appellees are "Montgomery County based companies that overwhelmingly conduct their business in Montgomery County." Trial Ct. Op. at 7. Further, the court concluded *Hangey* did not compel a different result, but rather emphasized trial courts "should not merely analyze the

- 15 -

percent of business conducted in a county when presented with other factors."

*Id.*

In addressing Appellants' claims, the court opined:

[Appellants'] argument is entirely reliant on comparing revenue derived from Philadelphia County to total revenue and a total figure of deliveries and/or services provided in Philadelphia County over a four year period. Other than a mere mention of having an active business license in the city of Philadelphia, [Appellants have] not provided this Court any other information to support [their] position [the corporate Appellees] regularly conduct business in Philadelphia. . . .

Trial Ct. Op. at 7 (footnote omitted). Furthermore, the court compared the "comprehensive" discovery in *Hangey* — which included "multiple depositions, exhibits, affidavits, tables and other verified facts" — with the "bereft of evidence" in the present case, namely responses to two interrogatory questions and one affidavit. *Id.* Even considering the limited evidence before it, the court noted that the amount of business the corporate Appellees conducted in Philadelphia had "been on a considerable downward trajectory" from 2016 to 2019. *Id.* at 9 (comparing 81 service calls amounting to $106,918.77 in revenue in 2016-17, to 45 service calls amounting to $51,422.13 in revenue in 2018-19). The trial court opined that it would be "inappropriate" to simply compare the percentage of business revenue the corporate Appellees derived from Philadelphia in the present case to the percentage deemed sufficient in *Hangey*. *Id.* at 9.

Upon our review, we detect no abuse of discretion on the part of the trial court in sustaining the corporate Appellees' preliminary objections to

venue and transferring the case to Montgomery County. *Anthony*, 190 A.3d at 607.

We conclude Appellants' argument herein, which purports to rely on *Hangey*, in actuality undermines the holding in that case. Appellants first highlight the fact that the percentage of revenue the corporate Appellees generated from Philadelphia in the present case (.27%) is "nearly 6 times the business of the defendant" in *Hangey* (.005%), which an *en banc* panel of this Court deemed to be of sufficient quantity for venue purposes. *See* Appellants' Brief at 23. This argument, however, contradicts the holding in *Hangey*:

> [T]he percentage of sales of a corporation in a venue is **but one factor** to consider when determining whether the quantity prong of the venue analysis is satisfied, and such evidence must be viewed within the context of the business at issue in each case.

*Hangey*, 247 A.3d at 1143 (emphasis added). Indeed, the *Hangey* Court determined HPP's contacts with Philadelphia were sufficient to justify venue in Philadelphia based on the "totality of the evidence" — specifically that HPP had "an authorized dealer in Philadelphia, and [sold] $75,310 worth of products through that dealer in 2016 in Philadelphia[.]" *Id.* Further, the Court noted that HPP was a "multi-billion-dollar company" so that the fact the percentage of revenue in Philadelphia County was small was not determinative. *Id.* at 1142.

In contrast, here, the limited record before us reveals that the corporate Appellees generated $57,820,711.68 in revenue over a four-year period, with

only $126,778.69 of that revenue generated from Philadelphia — equating to .27% of their total revenue. Although this percentage is greater than that in *Hangey*, we emphasize that the relevant time period is when the action was initiated. *See Zappala*, 909 A.2d at 1281. Indeed, the discovery provided in *Hangey* was limited to the year 2016, when the accident occurred. *See Hangey*, 247 A.3d at 1139. Here, the motor vehicle accident occurred in July of 2019, and Appellants filed suit in January of 2020. Thus, the corporate Appellees' 2019 revenue from Philadelphia would be the most relevant consideration. The record before us reveals only that the "number of deliveries of . . . products sold and/or service provided" to customers in Philadelphia for the year 2019 was "24," and that their "total sales . . . to customers residing or with offices located in Philadelphia County" during that year was "$31,562.21." *See* Appellants' Response in Opposition to Appellees' Preliminary Objections at § 12. As the trial court noted in its opinion, it was "not provided with comparative figures as to total revenue earned elsewhere or even the total revenue for the year 2019[,]" and that the 2019 figures reflected a decrease from the number of service calls and revenue generated in 2016. *See* Trial Ct. Op. at 7, 9. Thus, the .27% revenue percentage Appellants' highlight in their claim is misleading.

Furthermore, once the corporate Appellees provided some evidence to "dispel or rebut" Appellants' choice of forum, it was incumbent upon Appellants to demonstrate venue was nevertheless proper in Philadelphia County. *See Deyarmin*, 931 A.2d at 9. However, despite being provided ample time to

conduct depositions or seek additional interrogatory responses, Appellants did not conduct or demand further discovery. As such, we conclude the trial court acted well within its discretion when it determined the information before it was insufficient to justify venue in Philadelphia County.[11]

Accordingly, we affirm the order sustaining Appellees' preliminary objections, and transferring the underlying action to Montgomery County.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: <u>2/17/2022</u>

---

[11] We note Appellants also argue the corporate Appellees had a "personal presence in Philadelphia to deliver equipment or provide service" and engaged in a "concerted an intentional pattern over a number of years involving over one hundred homes and/or businesses." Appellants' Brief at 20, 23-24. This claim, too, is not borne out by the record. Further, Appellants' contention concerning the purported business license is also not supported by competent evidence.