J-A07034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| REBECCA QUINN HALL, AS ADMINISTRATIX OF THE ESTATE OF ROBERT ERIC HALL DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| HUSQVARNA PROFESSIONAL PRODUCTS, N.A., INC., HUSQVARNA PROFESSIONAL PRODUCTS, INC., HUSQVARNA AB, HUSQVARNA GROUP, HUSQVARNA AND MADLE'S HARDWARE, INC.  AND  MADLE'S HARDWARE | : | |
| | : | |
| APPEAL OF: HUSQVARNA PROFESSIONAL PRODUCTS, INC. | : | No. 1026 EDA 2021 |

Appeal from the Order Entered May 14, 2021
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  201001099

| | | |
|---|---|---|
| REBECCA QUINN HALL, AS ADMINISTRATIX OF THE ESTATE OF ROBERT ERIC HALL | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| HUSQVARNA PROFESSIONAL PRODUCTS, N.A., INC., HUSQVARNA PROFESSIONAL PRODUCTS, INC., HUSQVARNA AB,  HUSQVARNA GROUP, HUSQVARNA,  MADLE'S HARDWARE, INC.,  AND  MADLE'S HARDWARE | : | |
| | : | |
| APPEAL OF: MADLE'S HARDWARE, INC., AND MADLE'S HARDWARE | : | No. 1162 EDA 2021 |

J-A07034-22

Appeal from the Order Entered May 14, 2021
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 201001099

BEFORE: DUBOW, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:                              **FILED JUNE 24, 2022**

Appellants, Husqvarna Professional Products, N.A., Inc., Husqvarna Professional Products, Inc., Husqvarna AB, Husqvarna Group, Husqvarna (collectively, "HPP")[1] and Madle's Hardware, Inc. and Madle's Hardware (collectively, "Madle's Hardware"), appeal from the order entered in the Philadelphia County Court of Common Pleas, which overruled their preliminary objections to venue in Philadelphia County.[2] We affirm.

In its opinion, the trial court set forth the relevant facts and procedural history of this case as follows.

> On or about October 20, 2018, Decedent was operating a lawn tractor at his property in Coopersburg, PA, Lehigh County, when "the tractor unexpectedly rolled and caused Decedent to fall off the tractor onto his right foot and leg and then onto the ground." Decedent sustained a rupture of his right patellar tendon which required surgical repair on October 29, 2018. On November 25th, 2018, Decedent died from a pulmonary embolism, alleged to have resulted from the injuries he suffered to his right knee on October 20,

---

[1] The parties stipulated to the dismissal of some of the HPP defendants prior to this appeal.

[2] This appeal is properly before us pursuant to Pa.R.A.P. 311(b)(2) (stating appeal may be taken as of right from order in civil action or proceeding sustaining venue of matter or jurisdiction over person or over real or personal property if court states in order that substantial issue of venue or jurisdiction is presented).

- 2 -

2018. As a result, on October 15, 2020, [Appellee Rebecca Quinn Hall, as administratrix of the estate of Decedent Robert Eric Hall,] filed the instant action by way of a civil complaint.

[Appellee's] complaint names multiple defendants, all of whom fall into two distinct categories: [HPP] and [Madle's Hardware]. [Madle's Hardware is] located in Coopersburg, PA, Lehigh County. It is not averred that [Madle's Hardware] regularly conduct[s] business in Philadelphia County. Therefore, whether venue is proper in Philadelphia County is reliant on a finding that [HPP] regularly conduct[s] business in Philadelphia.[3]

[HPP] in the instant matter [is] the same [group of] defendants as [those] in [***Hangey v. Husqvarna Professional Products, Inc.***, 247 A.3d 1136 (Pa.Super. 2021) (*en banc*)]. Identical to the Plaintiff in ***Hangey***, [Appellee] alleges in the instant matter [that HPP] regularly conduct[s] business in Philadelphia, whereas the other named Defendants have no relation to Philadelphia County. HPP is a Delaware corporation with a principal place of business in Charlotte, North Carolina. HPP primarily sells lawn and garden equipment, including riding lawn tractors. … HPP is not registered to do business in Philadelphia County. HPP also does not rent, own or utilize any warehouses or other facilities in Philadelphia County. HPP does not have any addresses or telephone numbers in Philadelphia County. HPP does not own or rent any real property in Philadelphia County. HPP does not have any officers or employees residing in or based out of Philadelphia County.

On November 9, 2020 and November 11, 2020, [HPP] and [Madle's Hardware], respectively, filed preliminary objections claiming venue is improper in Philadelphia County. On November 30, 2020, [Appellee] filed answers to both [Appellants'] preliminary objections. On December

---

[3] ***See*** Pa.R.C.P. 1006(c)(1) (stating "an action to enforce a joint or joint and several liability against two or more defendants…may be brought against all defendants in any county in which the venue may be laid against any one of the defendants…").

8, 2020, this [c]ourt issued a rule to show cause allowing all parties until January 26, 2021 to take discovery and file supplemental briefs on the issue of improper venue. On December 22, 2020, [HPP] filed both a motion for reconsideration and motion to stay proceedings, asking this [c]ourt to not rule on the instant preliminary objections until the Superior Court's *en banc* panel issued an opinion in … [***Hangey***]. On January 11, 2021, this [c]ourt denied said motions, however, on January 14, 2021, this [c]ourt granted a request for an extension of time to file supplemental briefs until February 15, 2021. On February 15, 2021, all parties submitted to this [c]ourt supplemental briefs on the issue of improper venue.

On March 8, 2021, the Superior Court filed its *en banc* opinion in ***Hangey***[.] …[T]he *en banc* panel in the Superior court overturned the Philadelphia Trial Court opinion that [HPP] did not regularly conduct business in Philadelphia County. On March 10, 2021, [Appellee] filed a second supplemental brief as a result of the decision in ***Hangey***. On March 11, 2021, [HPP] also filed a second supplemental brief addressing ***Hangey***, in which [HPP] stated [its] intention to petition for allowance of appeal to the PA Supreme Court [in that case]. On March 16, 2021, [Madle's Hardware] filed a second supplemental brief adopting the position of [HPP's] second supplemental brief. On April 7, 2021, [HPP] filed a petition for allowance of appeal to the PA Supreme Court [in ***Hangey***] under the docket number 147 EAL 2021.

On May 14, 2021, this [c]ourt entered an Order overruling [Appellants'] preliminary objections [based on the ***Hangey*** decision]. …

On May 18, 2021, [HPP] filed an Appeal to the Superior Court. On June 9, 2021, Madle's Hardware…filed an Appeal to the Superior Court. On June 15, 2021, this [c]ourt entered an Order pursuant to Pa.R.A.P. 1925(b) ordering [Appellants] to file a statement of matters complained of on appeal. On July 6, 2021 and July 7, 2021, Madle's Hardware…and [HPP], respectively, filed a statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). On August 31, 2021, the Superior Court granted an order for consolidation of the…appeals.

(Trial Court Opinion, filed 9/24/21, at 1-4) (internal citations to record and footnotes omitted). On May 10, 2022, the Supreme Court granted allowance of appeal in **Hangey**. Thereafter, Appellants filed an application to stay in this Court pending the Supreme Court's decision in **Hangey**. We denied Appellants' application on May 18, 2022.

Appellants raise one issue for our review:

> Did the trial court misapply the law and rule unreasonably—thereby abusing its discretion—by eschewing the required case-by-case application of the quality-quantity test for venue and instead categorically applying this Court's holding in **Hangey v. Husqvarna Prof. Prods.** to determine that [HPP] regularly conducted business in Philadelphia County under Rule 2179(a)(2)?

(Appellants' Brief at 3).

Appellants argue the trial court improperly concluded that HPP regularly conducts business in Philadelphia County. Appellants assert that the trial court was not bound by this Court's *en banc* decision in **Hangey** and it should have conducted an analysis based on the facts of this case. Appellants insist the record evidence in this case materially differs from the record evidence in **Hangey**. Appellants emphasize that HPP's business contacts in Philadelphia are *de minimis* such that the quantity prong of the venue test is not satisfied. Appellants submit that HPP's sales in Philadelphia during 2019 should drive the analysis because it shows a "snapshot of the case" at the time it was initiated. Thus, Appellants contend that HPP's sales in Philadelphia between 2014-2020 are not relevant. Appellants also claim Appellee's "estimation" of

- 5 -

HPP's sales in Philadelphia between 2014-2020 is speculative.

In any event, Appellants maintain that HPP's sales in Philadelphia ranged from 0.003% to 0.017% of its national sales between 2014-2020, which is an average of only 0.009%. During 2019, Appellants insist HPP's sales in Philadelphia were approximately 0.003% of its national sales. Appellants contend the dollar amount of business conducted in Philadelphia in 2019 is materially less than that at issue in *Hangey*. In sum, Appellants maintain HPP's business activities in Philadelphia are not continuous **and** sufficient.

Aside from HPP's *de minimis* sales in Philadelphia, Appellants claim HPP lacked the other sorts of qualifying business contacts that, when coupled with the company's local sales, could possibly support a finding that the company was regularly conducting business in the chosen forum. For example, Appellants stress that HPP is not registered to do business in Philadelphia, does not own, rent, or utilize any facilities in Philadelphia, does not have any addresses or telephone numbers in Philadelphia, does not have any officers or employees residing or based in Philadelphia, and has not entered into any contracts with the local government. Appellants submit that any alleged online advertising HPP conducts to "target" Philadelphia County is irrelevant to the trial court's analysis because advertising does not satisfy the quality prong of the test. Likewise, Appellants posit that the existence of product warranties or product registrations tied to Philadelphia residents does not

satisfy the quality prong of the test, where such warranties "are collateral and incidental" to HPP's corporate purpose to sell lawn and garden equipment.

Further, Appellants insist that the allegedly voluminous sales of HPP products to consumers at Lowe's stores in Philadelphia County are of no moment because those are Lowe's sales—not HPP's sales. Appellants explain that HPP generates its revenue by selling the products in question to Lowe's **outside** of Philadelphia; if and when Lowe's later sells the products to consumers at one of its Philadelphia stores would evince **Lowe's** doing business in Philadelphia, not HPP. Appellants conclude the court abused its discretion in overruling their preliminary objections to venue, and this Court must reverse and remand for transfer of venue to Lehigh County. We disagree.

This Court has explained:

> The trial court is accorded considerable discretion in determining whether or not to grant a petition for change of venue, and the standard of review is one of abuse of discretion. The plaintiff's choice of forum is given great weight. Thus, the party seeking a change of venue bears the burden of proving that a change of venue is necessary, while a plaintiff generally is given the choice of forum so long as the requirements of personal and subject matter jurisdiction are satisfied.
>
> In determining whether a corporation or partnership regularly conducts business in a county, we employ a quality-quantity analysis. … A business entity must perform acts in a county of sufficient quality and quantity before venue in that county will be established. Quality of acts will be found if an entity performs acts in a county that directly further or are essential to the entity's business objective; incidental acts in the county are not sufficient to meet the

quality aspect of the test. Acts that aid a main purpose are collateral and incidental while those necessary to an entity's existence are direct. [**Purcell v. Bryn Mawr Hospital**, 525 Pa. 237, 579 A.2d 1282 (1990)] (incidental acts include advertising, solicitation of business from a county, education programs for personnel in county, hiring of personnel from the county, and purchase of supplies from county); **see also Krosnowski v. Ward**, 836 A.2d 143, 147 (Pa.Super.2003) (*en banc*) (business referrals to and from an independently operated business entity in another county do not establish venue in that county as referrals were in aid of main business purpose and not actual conduct of business in that county). Quantity of acts means those that are sufficiently continuous so as to be considered habitual. Each case must be based upon its own individual facts.

**Zampana-Barry v. Donaghue**, 921 A.2d 500, 503-04 (Pa.Super. 2007), *appeal denied*, 596 Pa. 709, 940 A.2d 366 (2007) (some internal citations and quotation marks omitted). **See also** Pa.R.C.P. 2179(a)(2) (stating venue is proper against corporation or similar entity in county where it "regularly conducts business"). "Further, the venue rules exclusively address where venue properly may be laid at the time the suit is initiated. Thus, question of improper venue is answered by taking a snapshot of the case at the time it is initiated; if it is 'proper' at that time, it remains 'proper' throughout the litigation." **Hausmann v. Bernd**, 271 A.3d 486, 493 (Pa.Super. 2022) (internal citation omitted).

"Pennsylvania appellate courts have often considered the percentage of overall business a defendant company conducts in a county to determine if the quantity prong was met." **Hangey, supra** at 1141.

[C]ourts often consider whether the percentage of a

defendant's business is sufficient to constitute "habitual" contact. However, no court has stated that the percentage of a defendant's business is the sole evidence relevant to the "quantity" analysis. Rather, courts must determine whether all the evidence presented, including the scope of the defendant's business, viewed in the context of the facts of the case, establish that a defendant's contacts with the venue satisfy the quantity prong.

Where this Court concluded that conducting a small percentage of a business in a venue did not satisfy the **quantity** prong, the Court's core finding was that the contacts failed the **quality** prong of the venue test and the cases often addressed defendants who were small and/or local companies, not multi-billion-dollar corporations. …

\* \* \*

The percentage of a company's overall business that it conducts in a given county, standing alone, is not meaningful and is not determinative of the "quantity" prong. Each case turns on its own facts, and we must evaluate evidence of the extent of a defendant's business against the nature of the business at issue. A small or local business may do all of its work in just a few counties or even a single one, while a large business may span the entire nation. Indeed, the percentage of sales a multi-billion-dollar company makes in a particular county will almost always be a tiny percentage of its total sales. Courts thus should not consider percentages in isolation. Rather, courts must consider all of the evidence in context to determine whether the defendant's business activities in the county were regular, continuous, and habitual.

*Id.* at 1141-42 (internal citations omitted) (emphasis in original). *See also*

*Dibble v. Page Transportation, Inc.*, No. 565 EDA 2021, 2021 WL 5408725

(Pa.Super. filed Nov. 19, 2021) (unpublished memorandum at \*6)[4] (stating:

---

[4] *See* Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions of this Court filed after May 1, 2019 for persuasive value).

- 9 -

"[I]n analyzing the quantity prong of the test, the number of contacts with Philadelphia County is to be considered from the perspective of the county rather than solely from that of the business. While a percentage of sales in a county may be miniscule viz-a-viz the company's overall sales, they may nonetheless amount to systematic, continuous and habitual, and therefore 'regular,' business in the county").

In **Hangey**, the Hangeys filed a complaint in Philadelphia County in March 2017 against HPP and Trumbauer's Lawn and Recreation, Inc., after Mr. Hangey was maimed when he fell off his lawnmower and the lawnmower ran over his legs while the blades were still engaged. The accident occurred in Wayne County. The defendants filed preliminary objections alleging improper venue. Discovery related to the issue of venue revealed, *inter alia*, that in 2016, HPP had approximately $1.4 billion in sales revenue in the United States, of which $75,310.00 came from direct sales in Philadelphia County. Of the $75,000 in sales made in Philadelphia in 2016, roughly $69,700 came from a single Husqvarna authorized dealer, DL Electronics, Inc. Approximately 0.005% of HPP's 2016 United States sales revenue resulted from direct sales in Philadelphia County.

Sales data from 2014 and 2015 was substantially similar, with approximately 0.005% of annual United States sale revenue resulting from direct sales within Philadelphia County. These figures did not include the revenue generated by selling products at retailers such as Home Depot,

Lowe's, or Sears. In the case of "big box" retailers, John Stanfield, the corporate representative for HPP, testified that HPP delivers its products to the retailers' distribution centers, none of which are located in Philadelphia County. The retailers then retain sole discretion as to where the products are offered for sale, including stores located in Philadelphia County. *See id.* at 1139. Following oral argument, the trial court sustained the preliminary objections and transferred venue to Bucks County. The Hangeys appealed.

This Court, sitting *en banc*, reversed the trial court's decision.[5] In doing so, this Court held:

> Here, HPP is a multi-billion-dollar corporation. It had at least one authorized dealer located in Philadelphia to which it delivered products for sale. Although HPP's sales through authorized dealers in Philadelphia constituted only 0.005% of HPP's national sales, the dollar figure of those Philadelphia sales in 2016 was $75,310. **The number and dollar figure of sales in Philadelphia, and the fact that HPP has an authorized dealer in Philadelphia to sell its products, is relevant to the determination of whether HPP's contacts with Philadelphia satisfied the "quantity" prong of the venue analysis.** Therefore, we conclude the trial court erred in relying almost exclusively on evidence of the percentage of defendant's business that occurred in Philadelphia when addressing the quantity prong.
>
> Further, based on the totality of the evidence, HPP's contacts satisfied the quantity prong of the venue test. Its contacts with Philadelphia—including having an authorized dealer in Philadelphia, and selling $75,310 worth of products through that dealer in 2016 in Philadelphia—were "sufficiently continuous so as to be considered habitual." *See Zampana-Barry*, 921 A.2d at 504.

---

[5] Judge Stabile wrote a dissent, which this author joined.

- 11 -

> In reaching this conclusion, we do not find it necessary to approve or disapprove of any of our prior decisions. Rather, our conclusion is based on the prior precedents of the Pennsylvania Supreme Court and consistent with those of our Court. However, as discussed above, we clarify that the percentage of sales of a corporation in a venue is but one factor to consider when determining whether the quantity prong of the venue analysis is satisfied, and such evidence must be viewed within the context of the business at issue in each case.

*Hangey, supra* at 1142-43 (internal footnote omitted) (emphasis added). This Court noted that venue was proper in Philadelphia without reference to sales from Lowe's or similar stores. *Id.* at 1142 n.2. This Court further stated that there was no challenge to the trial court's finding that the quality prong of the venue test was met. *Id.* at 1143. Accordingly, this Court reversed the order sustaining the preliminary objections to venue.

Instantly, the trial judge in this case is the same trial judge who presided in *Hangey*. The court offered the following rationale for overruling Appellants' preliminary objections:

> It was this [c]ourt's decision in *Hangey*, due to the facts Plaintiff provided on the record, that [HPP] did not regularly conduct business in Philadelphia County. This [c]ourt decided the evidence produced by the *Hangey* Plaintiffs, expressly noting $75,310 worth of sales amounting to .005% of [HPP's] total revenue in 2016, was not enough to overcome the jurisdictional challenge of [HPP]. Ultimately, on March 8, 2021, an *en banc* panel of the Superior Court held that Plaintiff had not met their burden and it was an abuse of this [c]ourt's discretion to decide [HPP] did not regularly conduct business in Philadelphia County. While this [c]ourt still believes it did not abuse its discretion in rendering its opinion, it respects and remains deferential to the opinion of the Superior Court.

In the instant matter, [Appellee relies] on identical arguments and elements of proof. As such, since the instant matter involves the exact same question about [HPP] addressed by the Superior Court in **Hangey**, whether [HPP] regularly conduct[s] business in Philadelphia County, this [c]ourt is bound by that decision.

[7] This [c]ourt recognizes [Appellee has] a less complete picture of the applicable sales numbers in the relevant years in the instant matter than the Plaintiffs in **Hangey**, as [Appellee] did not provide this [c]ourt with sales figures for the year 2018 (the year of the accident) or the year 2020 (the year the instant matter was initiated). [Appellee] did, however, provide this [c]ourt with the following figures: In 2018, 2019, and 2020, respectively, the percentage of Philadelphia based sales was .017%, .003% and .010%. …

(Trial Court Opinion at 7-8).

The record supports the trial court's analysis. Here, John Stanfield, the Assistant Secretary for the parent company of HPP provided deposition testimony on February 8, 2021. Mr. Stanfield confirmed that HPP has four authorized independent dealers in Philadelphia. Those dealers are not the same as "big box" retailers located in Philadelphia such as Home Depot and Lowe's. Additionally, HPP confirmed its percentage of sales in Philadelphia from 2014-2020 as follows: 2014: 0.005%, 2015: 0.005%, 2016: 0.005%, 2017: 0.015%, 2018: 0.017%, 2019: 0.003%, and 2020: 0.010%. HPP did not provide the dollar amount of sales for 2018 (the year of the accident) or 2020 (the year Appellee filed the complaint). Instead, HPP disclosed only the

dollar amount of sales for 2019.[6]

Although Appellants contend 2019 is the relevant year to analyze, Appellee initiated the instant lawsuit in late 2020. Thus, 2020 is the more appropriate year for a "snapshot" of the case.[7] **See Hausmann, supra**. Even without the specific dollar amount of sales for 2020, the record makes clear the quantity prong of the venue test was satisfied. As in **Hangey**, the record in this case demonstrates that HPP had at least one authorized dealer located in Philadelphia (specifically, four). At the time the complaint was filed in 2020, HPP's percentage of sales in Philadelphia was 0.010% of its total national sales. The fact that this percentage might be small is not determinative on its own. **See Hangey, supra**. **See also Dibble, supra**. In light of the law as set forth in this Court's decision in **Hangey**,[8] we agree with the trial court that the record in this case similarly demonstrated that HPP's contacts in

---

[6] The parties stipulated to a confidentiality order concerning the dollar amount of HPP's sales. As we write for the benefit of the parties, and in light of their stipulation, we will not reveal the dollar amount of sales in this memorandum.

[7] In **Hangey**, this Court analyzed HPP's sales in 2016, where the action was initiated in March 2017. Because the complaint in **Hangey** was filed in early 2017, the 2016 sales were more appropriate to analyze in that case.

[8] Although our Supreme Court has granted allowance of appeal in **Hangey**, unless and until our Supreme Court rules otherwise, this Court's *en banc* decision in **Hangey** remains binding precedent. **See Commonwealth v. Martin**, 205 A.3d 1247 (Pa.Super. 2019) (stating this Court is bound by existing precedent and continues to follow controlling precedent unless it is overturned by our Supreme Court).

Philadelphia satisfy the quantity prong of the venue analysis.[9]  Accordingly,

we affirm the order overruling Appellants' preliminary objections to venue.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/24/2022

---

[9] Any challenge to the quality prong of the venue test is waived where neither Madle's Hardware nor HPP's Rule 1925(b) statement articulated a **specific** challenge under the quality prong of the test.  ***See Lineberger v. Wyeth***, 894 A.2d 141 (Pa.Super. 2006) (stating general rule that vague Rule 1925(b) statement can render issues waived on appeal; when court has to guess what issues appellant is appealing, that is not enough for meaningful review). Although Appellants mentioned the "quality-quantity" test in their respective concise statements, Appellants failed to specify a complaint concerning the **quality** prong of the test, instead, focusing their claims of error on the **quantity** prong of the test.

Moreover, HPP is in the business of distributing consumer outdoor products. HPP furthers this business objective by having independent authorized dealers in Philadelphia.  HPP derives revenue directly from sales of its products in Philadelphia.  Thus, HPP performs acts in Philadelphia that directly further or are essential to its business objective, such that the quality prong of the venue test is satisfied.  ***See Zampana-Barry, supra***.